GOLDEN REWARD MIN. CO. v. BUXTON MIN. CO.

(Circuit Court, D. South Dakota, W. D.    March 13, 1897.)

1. PATENT FOR MINING CLAIM—FAILURE OF ADVERSE CLAIMANT TO CONTEST.
    Under Rev. St. §§ 2325, 2326, a decision of the land office awarding a pat-
ent for a mining claim after due publication of notice is conclusive upon
an adverse claimant who has failed to file his claim, except for reasons
which a court of equity might allow to be urged against a judgment at law.

2. SAME.
    The question as to the true boundary of a mining claim for which a pat-
ent is asked is a question of fact, coming properly within the jurisdiction
of the land department; and its action therein is conclusive, in the absence
of fraud.

3. SAME—PRINCIPAL CHARGED WITH KNOWLEDGE OF AGENT.
    Where there was a conflict in the boundaries of the patents for two
mining claims issued to separate corporations, the corporation to which the
later patent was issued, having failed to adverse the claim of the other
company, cannot claim relief in equity, upon the ground of mistake in the
boundary, although the person whom it employed to take all necessary pro-
ceedings to obtain its patent was also the agent of the other company, it
being charged with the knowledge of its agent as to the conflict.

4. SAME.
    Where a corporation, in applying for a patent for a mining claim, made
a distinct disclaimer of a specific quantity of land, as being in conflict with
a prior patent, it cannot claim relief in equity as to the conflict.

5. CORPORATIONS—NEGLIGENCE OF AGENTS.
    As a corporation acts only through its officers and agents, it may be de-
vested of its property by the negligence of its agents in failing to adverse
an application for a patent for a mining claim.

G. C. Moody, Wm. R. Steele, and W. L. McLaughlin, for com-
plainant.
Martin & Mason and Granville G. Bennett, for defendant.

CARLAND, District Judge.    The complainant, a citizen of the
state of South Dakota, filed its bill against the defendant, a citi-
zen of the state of Iowa, for the purpose of having the title to a
portion of the Bonanza mining claim, situated in the Whitewood
mining district, Lawrence county, S. D., declared and decreed to
be held in trust by said defendant for the use and benefit of the
complainant.    The bill also prayed for an injunction against the
prosecution of an action at law now pending in this court, brought
by the defendant against the complainant, to recover the sum of
$220,000, alleged to be the value of certain ore taken by complain-
ant from that portion of the Bonanza mining claim in dispute in
the present action.    The amount of mineral land in dispute, as
shown by the testimony, is 1.34 acres.    A demurrer to the bill
was interposed, and, after argument, was overruled.    The ruling,
however, on the demurrer, is immaterial, as the case made by the
bill is not the case made by the evidence.    The cause has been sub-
mitted on pleadings and proofs, and, after a careful examination
of a voluminous record, I have arrived at certain conclusions, here-
inafter stated.    If the disposition of this cause depended upon a
finding that the original southeast corner of the Bonanza mining
claim was, at the time said claim was surveyed for patent, swung

onto the Silver Case mining claim to the extent claimed by witnesses for complainant, I should not be able to find from the evidence that such was the fact, as the evidence is in sharp conflict, and is not of that clear and convincing character that is necessary to impeach a document of such solemnity as a patent from the United States.

As one of the positions taken by the complainant at the hearing is based on the idea that the southeast patent corner of the Bonanza is at the place where the same was originally located, I prefer to base my decision on certain principles of law which, in my opinion, are fatal to the right of the complainant to the relief prayed for in its bill; and I shall therefore concede, for the purposes of this opinion, that, at the time of the official survey of the Bonanza for patent, the southeast corner stake was, by mistake, moved onto the Silver Case to the extent claimed by complainant. With this concession in the case, a fair preponderance of the evidence shows the following state of facts:

On the 31st day of March, 1888, the defendant, the Buxton Mining Company, filed in the United States land office, at Deadwood, Dakota territory, an application for a patent for the Bonanza mining claim, which application contained a correct description of said claim according to courses and distances. Upon the filing of said application, the usual order was made for the posting and publishing of the notice of said application, and the usual notice was posted on the claim, at the land office, and also was published in a newspaper for the period required by law and the rules and regulations of the general land office. No adverse claim having been filed within the period of 60 days, such proceedings were thereafter had that on the 12th day of March, 1891, a patent was issued by the United States to the defendant, the Buxton Mining Company, for the Bonanza mining claim. On the 11th day of August, 1888, the complainant, the Golden Reward Mining Company, filed an application in the United States land office, at Deadwood, Dakota territory, for a patent from the United States for the Silver Case mining claim. This application contained a description of the claim by courses and distances, and the description concluded with these words: "Containing 8.76 acres, after deducting 1.50 acres, in conflict with Bonanza lode lot 516, and not claimed by this claimant." Notice of said application, containing the description of the Silver Case, as set forth in the application for patent, was posted and published as required by law; and, no adverse claim being filed, such proceedings were thereafter had as resulted in the issuance of a patent by the United States to the complainant, for the Silver Case, March 17, 1892. It will now be observed that, so far as the record of the proceedings which resulted in the issuance of the patents for the Bonanza and Silver Case are concerned, they show that each applicant received a patent for just what it applied for, and that there were no adverse claims.

The proofs show that the Bonanza was first located, and its original location, with reference to adjoining claims, as claimed by complainant, is represented by the following diagram:

Its location as patented, with reference to adjoining claims, is shown by the following diagram:

It thus appears, and it is conceded, that there always was a conflict between the Bonanza and Silver Case; the contention of the complainant being that, at the time the Bonanza was surveyed for patent, the original southeast corner of the Bonanza was swung onto the Silver Case to such an extent as to change what was formerly a conflict of $^{15}/_{100}$ of an acre to $1^{34}/_{100}$ of an acre. It appears also that the defendant Buxton Mining Company was the owner of the Little Bonanza mining claim, which is shown by Exhibit A to lie along the westerly side of the Bonanza, and by Exhibit B to lie along the westerly side of the Little Dividend.

Complainant claims that the swinging of the Bonanza onto the Silver Case not only allowed the defendant to obtain a portion of the Silver Case, but also allowed it to locate and patent the First Dividend. On the other hand, the defendant claims that, when it surveyed the Bonanza for patent, it was found that the claim was too wide at its southerly end line by 100 feet, so that, in order that the claim might conform to the limitations prescribed by law, it was necessary to draw in the west side line of the Bonanza, thus creating a space between the Bonanza and Little Bonanza, which defendant located and patented as the First Dividend. The official surveys upon which the applications were based, to obtain patents for the Bonanza and Silver Case, were made by Peter L. Rogers, United States deputy mineral surveyor. The official survey of the Bonanza was completed December 10, 1887, and of the Silver Case April 21, 1888. In November, 1887, the defendant employed one Thomas H. White to superintend and take all necessary proceedings to obtain a patent for the Bonanza. In January, 1888, the complainant employed the same Thomas H. White to superintend and take all necessary proceedings to obtain a patent for the Silver Case. Both of these employments were accepted by said Thomas H. White, and, under his supervision, patents were obtained for said mining claims, as hereinbefore stated.

It is the theory of the bill filed by complainant that the deputy mineral surveyor, Peter L. Rogers, was a mere agent of White, and that Rogers did whatever White requested him to do; that White, while he was, to the knowledge of defendant, the agent of the complainant, to obtain a patent for the Silver Case, was corrupted by the defendant to swing the Bonanza onto the Silver Case in making the official survey. These allegations of the bill are not only not proven by the evidence, but are disproven. The testimony fairly shows that Peter L. Rogers made the official surveys of both mining claims, and that the official survey of the Bonanza was completed before White was employed by complainant to obtain a patent for the Silver Case. There is no evidence upon which to base any finding that the defendant knew anything about the fact that White had been employed by complainant to obtain a patent for the Silver Case. Fraud is never presumed. White is deceased, and his testimony cannot be had. A sworn officer of the government has sworn that the surveys are correct. The department of the government vested with the power to pass upon the proceedings for patent has, without objection, approved them. It therefore results, after a careful consideration of all the testimony in the

case, and after making the concession that the proofs show that the Bonanza was swung onto the Silver Case to the extent claimed by complainant, that there was a mistake made by the official surveyor in locating the boundary lines of the two mining claims. There is no evidence in the record upon which to base a finding that fraud was committed by any one. Attention has been called to the fact that the location certificate of the First Dividend was not filed for record until the time for adversing the Bonanza had elapsed; that White was not paid for his services by defendant until after the expiration of the same period. These isolated facts might be material if associated with fraudulent acts, but standing alone they prove nothing.

Is, then, the mistake mentioned such as a court of equity will relieve against in a proceeding of this character? At the threshold we must not forget that this proceeding is not one between contesting claimants to mineral land in a United States land office, nor is it a proceeding to try in court an adverse claim under the statutes of the United States, but it is a proceeding directly attacking a patent for mineral lands granted by the government of the United States. With the patent as the object of attack, we must come armed with the weapons which are necessary to overcome this grant of the government, or defeat is inevitable.

Sections 2325 and 2326 of the Revised Statutes regulate the mode of procedure where adverse claims are filed against applications for patents to mineral lands. Section 2325, among other things, provides:

"If no adverse claim shall have been filed with the register and receiver of the proper land office at the expiration of the sixty days of publication, it shall be assumed that the applicant is entitled to a patent upon the payment to the proper officer of $5.00 per acre, and that no adverse claim exists, and thereafter no objection from third parties to the issuance of a patent shall be heard, except it be shown that the applicant has failed to comply with the terms of this chapter."

Section 2326 provides for a stay of proceedings in the land office upon the filing therein, within the 60 days, of an adverse claim, and also provides that the party filing the adverse claim shall, within 30 days thereafter, commence proceedings in a court of competent jurisdiction to determine the question of the right of possession, and prosecute the same with reasonable diligence to final judgment; and a failure so to do shall be a waiver of his adverse claim. These provisions provide a method whereby all parties having adverse claims to mineral lands, for which a patent is asked, may have their day in court. If a party fails to file his adverse claim in the land office in the time provided by law, or if, having so filed it, he fails to commence proceedings in accordance with section 2326, he waives his adverse claim. With reference to the proceedings in the land office, the publication of the proper notice for the prescribed period is due process of law. The proceeding is judicial in its character, and in the nature of a proceeding in rem. If there is no adverse claim, a decision of the land office awarding the patent to the claimant is a judgment by default, as conclusive as to the matter adjudicated as a judgment

upon contested issues. The expression "it shall be assumed" must be construed to mean "conclusively assumed," as any other construction would defeat the object of the statute. In using the word "conclusively," I do not mean to say that the statute has closed the doors of a court of equity to adverse claimants in every case; but I think it may safely be asserted that the failure to adverse, as provided by the sections referred to, deprives the adverse claimant of all remedies except those which a court of equity might allow to be urged against a judgment at law. Wight v. Dubois, 21 Fed. 694; Kannaugh v. Mining Co. (Colo. Sup.) 27 Pac. 245; Hamilton v. Mining Co., 33 Fed. 562; Four Hundred & Twenty Min. Co. v. Bullion Min. Co., 3 Sawy. 634, Fed. Cas. No. 4,989; Dahl v. Raunheim, 132 U. S. 260, 10 Sup. Ct. 74; U. S. v. Throckmorton, 98 U. S. 65; Vance v. Burbank, 101 U. S. 519.

In U. S. v. Throckmorton, 98 U. S. 65, the exception to the maxims, "Interest rei publicæ ut sit finis litium," and "Nemo debet bis vexari pro una et eadem causa," is thus stated:

"Where the unsuccessful party has been prevented from exhibiting fully his case by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise, or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff, or where an attorney fraudulently or without authority assumes to represent a party, and connives at his defeat, or where the attorney regularly employed corruptly sells out his client's interest to the other side,—these and in similar cases, which show that there never has been a real contest in the trial or hearing of a case, are reasons for which a new suit may be sustained to set aside and annul the former judgment and decree, and open the case for a new and fair hearing."

Of course, where a party has had a full and fair opportunity to be heard, he is as much concluded by the judgment as if he actually was heard. 1 Black, Judgm. § 87; U. S. v. White, 17 Fed. 561; Howard v. City of Huron (S. D.) 60 N. W. 803.

In Vance v. Burbank, supra, it is said:

"The appropriate officers of the land department have been constituted a special tribunal to decide such questions, and their decisions are final to the same extent that those of other judicial or quasi judicial tribunals are. It has also been settled that the fraud in respect to which relief will be granted in this class of cases must be such as has been practiced on the unsuccessful party, and prevented him from exhibiting his case fully to the department; so that it may properly be said there has never been a decision and a real contest about the subject-matter of inquiry."

Laying aside the question of fraud, as limited and defined in the cases cited, it is settled that the action of the land department in issuing a patent is conclusive upon all questions of fact coming properly within the scope of its jurisdiction, and is not subejct to review by any other tribunal. The question as to what were the true boundaries of the Bonanza and Silver Case was a question of fact, coming properly within the jurisdiction of the land department. Carson City Gold & Silver Min. Co. v. North Star Min. Co., 73 Fed. 597; Doe v. Mining Co., 54 Fed. 940.

Whether we have in view the sections of the Revised Statutes quoted, or simply the decisions of the land department, which resulted in the issuance of the patents, in either case, in order to suc-

ceed in this proceeding, the complainant must bring itself within the operation of some one of the rules under which it is permissible to attack the patent.

It is contended by counsel for complainant that it was prevented from making its defense or adverse claim to the application for the Bonanza patent by the acts of White and the defendant, confederating and acting together for the purpose of suppressing the truth as to the amount of land claimed within the boundary lines of the Bonanza. How and by whom was the truth suppressed? How and by whom was the complainant prevented from adversing the Bonanza claim for patent? If the defendant, in its application for the Bonanza patent, was claiming property that belonged to the complainant, then the complainant was a defendant in that proceeding. Was it served with process? The testimony shows that it was in the manner provided by law. Did it make any defense? None. And there is not a syllable of testimony that any one prevented it from so doing, or that any one suppressed the truth as to the claim made by defendant in its application for the Bonanza patent. The president of the complainant swears that he had no knowledge of the application for the Bonanza patent till the fall of 1888. This knowledge, which the president did not have, must have been actual knowledge; for when the evidence shows, as it does in this case, that the notice of the application for the Bonanza patent was posted and published as the law requires, then the law says that the complainant had notice, and it will not be permitted to say that it did not. The notice which the law provides is what is required; no more, no less. There is no evidence in the record that anything was done to prevent the complainant from receiving this legal notice. It was a domestic corporation, with its officers, agents, and corporators residing at Deadwood, the place where the local land office was situated, and a place but a few miles from the Bonanza claim, and the place where the notice was published. The conditions were most favorable for the giving to the complainant the notice required by law. I think I am justified in saying that the evidence shows two reasons why the Bonanza application was not adversed by the complainant: First. The conflict that was always known by all parties to exist between the Bonanza and Silver Case, whether it amounted to $15/100$ of an acre or $1^{34}/100$ of an acre, at the time of the application for patent, was considered of but little value. The second reason is found in the answer of the president of complainant to the question as to whether he knew that any plat was posted: "I did not know anything about it. As I have explained before, I had some other business of more importance to me, and was attending to the mercantile business, and did not pay any attention to mining." These reasons must be correct, or else the complainant had no adverse claim to assert. White was not employed by complainant to adverse the Bonanza patent application, and not at all until after the official survey of the Bonanza had been made; so that it is impossible to find anything that White did or did not do in reference to the Bonanza that in any way prevented the complainant from presenting its ad-

verse claim. The fact that the complainant had employed White to obtain a patent for the Silver Case did not relieve it of the duty to employ some one to adverse the Bonanza patent application.

It is conceded by counsel for complainant that the officers of complainant were negligent in not better looking after the interest of the corporation, but it is asserted that the corporation ought not to be divested of its property by the negligence of its officers and agents. It is a sufficient answer to this proposition to observe that a corporation acts only through its officers and agents. By their acts a corporation is benefited or injured. By their industry and strict attention to their duties, corporations accumulate property. By their negligence, they may lose it. In the practical affairs of life, the nebulous fiction of our thought called a "corporation" cannot be separated from its living members. Especially is this so in a case, like the one under consideration, where the officers and agents controlled a majority of the stock.

If I am correct as to the foregoing propositions, then the complainant has lost its interest, if any it ever had, in the mineral land in controversy. But, as the complainant relies strongly for the maintenance of its rights on the employment of White to obtain a patent for the Silver Case, it is necessary to inquire as to what effect that employment had on the rights of the parties.

Peter L. Rogers completed the official survey of the Silver Case on April 21, 1888. This survey was made by Rogers at the request of White, the agent of the complainant. At the completion of the official survey, White, as the agent of complainant, knew the boundaries of the Silver Case, and there is no evidence in the record that will prevent the charging of the knowledge of White to the complainant; and, if the complainant is not to be charged with White's knowledge, wherein did White suppress the truth? On July 24, 1888, the surveyor general of Dakota territory certified to the correctness of the official survey of the Silver Case, and to the plat accompanying the same. The plat and official survey thus certified were true copies of the original; and the plat and survey, not only by lines, figures, letters, and signs, but in so many words, described the area in conflict with the Bonanza as 1.50 acres. On the 30th day of July, 1888, George C. Hickok, as secretary of the complainant, thereunto duly authorized, swore to an application for a patent for the Silver Case, in which application there was a distinct disclaimer of 1.50 acres, as being in conflict with the Bonanza. The notices issued on the filing of this application contained exactly the same declaration. It will not do for the complainant to say that this application was made after the expiration of the period in which adverse claims could be filed to the Bonanza, and therefore the description of the Silver Case could not be otherwise; for, if the complainant is to be charged with White's knowledge, it had known the extent of the conflict since April 21, 1888; and if it is not to be charged with White's knowledge, and its own position, taken as true, that it had no knowledge of the Bonanza patent proceedings until the fall of 1888, then this act of the corporation was a voluntary and deliberate disclaimer of

title to the land in controversy. The complainant was the actor in the Silver Case proceedings, and was bound to know what it was claiming. Especially is this the case when we consider the fact that complainant, by its own testimony, always knew that there was some conflict between the Silver Case and the Bonanza. The way the official survey described the amount of conflict rendered it possible for any one who could read to determine its amount. So it cannot be claimed that there was any suppression of the truth by any one. If the secretary of the complainant could not tell what 1 acre and $^{50}/_{100}$ acre meant, after swearing to the application for patent; or, if he knew and did not care, then he was either so incompetent or negligent as to prevent the corporation from asking a court of equity for relief.

Counsel for complainant, at the hearing, advanced a claim for relief, which, while it is inconsistent with the whole theory of the bill, is alleged to arise from the case made by the defendant. The claim is this: Defendant claims that the Bonanza, as originally located, July 27, 1877, was, at its southerly end, 100 feet wider than the law permitted; in other words, it was 400 feet wide, instead of 300. Complainant says, if this is so, then the location was void, for the excess, and that no valid claim was filed for the excess until the Bonanza amended location certificate was filed, March 20, 1888; and as the Silver Case was located January 16, 1884, that the latter location is prior and better in right to the Bonanza amended location to the extent of 100 feet of the mineral land in conflict. Defendant replies that there is no evidence as to where the vein or lode was situated on the Bonanza claim, and that, where the vein has not been actually established and run, the point of discovery is presumed to be the middle of the vein, and that a line extended southerly on the Bonanza, from the point of discovery, as shown by the evidence, would throw the excess on the westerly side of the Bonanza; that is, the excess over 150 feet from the middle of the vein would be on the west side. Complainant again avers that the presumption referred to only applies to vertical veins, and not to flat ones, such as the Bonanza is shown to contain. Again, conceding the claim of the complainant, and admitting that the excess in the Bonanza location was on the easterly side, still it simply results that, when the application for the Bonanza patent was made, the defendant was claiming a portion of the Silver Case, which, if the complainant did not adverse, would be lost to it, as, on this theory of the complainant's case, there could be no fraud and no moving of stakes, but simply a claim for patent, prosecuted to final conclusion, without objection. I see no escape from the conclusion that a decree must be entered dismissing the bill of complaint, with costs.