CONKLING MINING CO. v. SILVER KING COALITION MINES CO.*

(Circuit Court of Appeals, Eighth Circuit. February 12, 1916.)

No. 3977.

1. APPEAL AND ERROR ☞1009(1)—REVIEW—FINDINGS.

The finding of the chancellor should not be disturbed, unless it clearly appears that he has made a serious mistake of fact, or has fallen into some plain error of law.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3970, 3978; Dec. Dig. ☞1009(1).]

2. PUBLIC LANDS ☞114(1)—"PATENT"—CONSTRUCTION AND OPERATION.

A "patent" of mineral land within the jurisdiction of the Land Department is in the nature of a proceeding in rem, and is the judgment of that tribunal upon the evidence before it that the patentee has located

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied June 9, 1916.

the tract applied for and made application, posted notice, filed the certificate of improvements, etc., as required by Rev. St. §§ 2324, 2325 (Comp. St. 1913, §§ 4620, 4622), et seq., and is entitled to the land described therein, and it is also the conveyance of the legal title to the patentee in execution of the judgment, concluding the rights of the claimant and of the United States to such land and the unavoidable issues as to the validity, the extent, and the boundaries of the claim.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 314, 316; Dec. Dig. ☞114(1).

For other definitions, see Words and Phrases, First and Second Series, Patent.]

3. PUBLIC LANDS ☞106(1)—PATENT—CONCLUSIVENESS—COLLATERAL ATTACK.
The Land Department's adjudication of matters within its jurisdiction, such as its issuance of a patent to land, is, like those of other judicial tribunals, impervious to collateral attack, and voidable only by direct suit for that purpose on the ground of fraud or error of law.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 104, 301; Dec. Dig. ☞106(1).]

4. MINES AND MINERALS ☞44—PATENT—CONSTRUCTION—PRESUMPTION.
There is a strong presumption that the plain description in a patent of mineral lands was right, and expressed the actual intention of the parties to it.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 130; Dec. Dig. ☞44.]

5. MINES AND MINERALS ☞38(16)—PATENT OF MINERAL LANDS—DESCRIPTION—SUFFICIENCY OF EVIDENCE.
In a suit to quiet the title to an undivided three-fourths of a mining claim, the patent of which recited that the plat and field notes were before the department, and which field notes recited that the claim was 1,500 feet long and 600 feet wide, and which plat showed a tract 1,500 feet long and 600 feet wide, and to recover of defendant three-fourths of the value of the ore which it had removed from a stope beneath the surface of plaintiff's claim, evidence *held* not to sustain a finding that the patent did not convey the westerly 135.5 feet of the land described in the patent, and to show that it conveyed, and that the plaintiff owned, a tract 1,500 feet in length and 600 feet in width described in his patent.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 102½; Dec. Dig. ☞38(16).]

6. BOUNDARIES ☞3(3)—CONTROLLING ELEMENTS—CONFLICT—MONUMENTS.
It is the general rule that in cases of conflict monuments prevail over courses and distances; but such rule, designed only to aid in ascertaining the land which the parties intended to convey, is not without its exceptions.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 6–19; Dec. Dig. ☞3(3).]

7. MINES AND MINERALS ☞43—PATENTS—DESCRIPTION—STATUTE—CONSTRUCTION.
Rev. St. § 2327, as amended by Act April 28, 1904, c. 1796, 33 Stat. 545 (Comp. St. 1913, § 4626), to provide that, where patents have issued for mineral lands, those lands only shall be deemed to be patented which are bounded by the lines actually marked, defined, and established upon the ground by the monuments of the official survey upon which the patent is based, which shall always constitute the highest authority as to what land is patented, and prevail in case of any conflict, passed 12 years after the United States had conveyed a mining claim to its patentee, was not intended to apply thereto, where there was no conflict between the courses and distances and the monuments named in the patent, and to permit

parol evidence to create a conflict between those monuments and the courses and distances.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 125-129; Dec. Dig. 43.]

8. MINES AND MINERALS 31(1)—EXTRALATERAL RIGHTS.

The owner of a mining claim has no extralateral rights beyond the end lines of his claim extended vertically downward, except when by mistake he has located his claim across his discovery vein; extralateral rights being a special privilege.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 75; Dec. Dig. 31(1).]

9. MINES AND MINERALS 38(14)—EXTRALATERAL RIGHTS—BURDEN OF PROOF.

Defendant, claiming the right to ore in a stope beneath the surface of plaintiff's claim, as a part of a fissure vein whose apex was found within and on its strike crossed the side lines of defendant's claims, and in its dip passed through the vertical planes of the end lines of such claims and thence beneath the surface of plaintiff's claim, under the exception that when by mistake the locator places his claim across, instead of along, the vein or lode which he discovers, so that the latter crosses the side lines of his claim, his side lines become his end lines, and he may follow the lode or vein on its dip beyond the vertical plane of the end line of his claim, had the burden of bringing itself within the exception by showing that the discovery vein on each of its three claims extended across, and not along, the claim, and that the locator by mistake placed each claim across, instead of along, its discovery vein.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 101; Dec. Dig. 38(14).]

10. MINES AND MINERALS 38(18)—EXTRALATERAL RIGHTS—SUFFICIENCY OF EVIDENCE.

Evidence in such suit held not to sustain the defendant's claim to the ore in a stope beneath the surface of the plaintiff's claim, on the ground that such ore was a part of a fissure vein whose apex was found within, and on its strike crossed, the side lines of the defendant's three claims, and on its dip passed through the vertical planes of the end lines of such claims and beneath the surface of the plaintiff's claim.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 104; Dec. Dig. 38(18).]

11. MINES AND MINERALS 31(1)—BOUNDARIES—END LINES.

Under Rev. St. § 2322 (Comp. St. 1913, § 4618), giving the locators of claims theretofore located any additional veins existing therein, the end lines of a claim as the locator places them, with the single exception that, when by mistake he locates his claim across, instead of along, the vein he discovers, fix the limit beyond which he may not go in the appropriation of any vein or veins whose apexes are found within the surface lines of his claim, and the end lines of the original discovery vein are the end lines of all the veins discovered within the surface boundaries of his claim.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 75; Dec. Dig. 31(1).]

Appeal from the District Court of the United States for the District of Utah; John A. Marshall, Judge.

Suit to quiet title by the Conkling Mining Company against the Silver King Coalition Mines Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

This is a suit to quiet the title to an undivided three-fourths of the Conkling mining claim, and to recover of the defendant three-fourths of the value

of the ore which it has removed from the Elephant stope beneath the surface of the Conkling claim. The parties to the suit admit that the plaintiff is the owner of the undivided three-fourths of that claim under a patent issued to its predecessor in interest on February 3, 1902, whereby the United States conveyed that claim in the usual way, "bounded, described and platted as follows, with magnetic variation seventeen degrees and twenty minutes east: "Beginning at corner No. 1 a pine post four inches square marked 'U. S. 689 P. 1,' thence first course, north twenty-one degrees and nine minutes west three hundred feet to discovery point, six hundred feet to corner No. 2, a pine post four inches square marked 'U. S. 689 P. 2,' being also corner No. 4 of lot No. 191, the Lincoln lode claim, and corner No. 2 of lot No. 580, the Pirate King lode claim, from which U. S. mineral monument No. 4 bears north thirty-two degrees and fifty-two minutes west nine hundred and thirty-nine and three-tenths feet distant, and a pine tree four inches in diameter marked 'U. S. 689 P. 2 B. T.' bears north thirteen degrees west twenty-eight feet distant; thence second course, south sixty degrees and forty-five minutes west one thousand five hundred feet to corner No. 3; thence third course, south twenty-one degrees and nine minutes east six hundred feet to corner No. 4; thence fourth course, north sixty degrees and forty-five minutes east one thousand five hundred feet to corner No. 1, the place of beginning—said lot No. 689 extending one thousand five hundred feet in length along said Conkling vein or lode, and containing twenty acres and forty-five hundredths of an acre of land more or less."

The defenses were two: First, that the ore was taken from the westerly 135.5 feet of the claim described in the patent and that this part of the claim was not conveyed by the patent, because the posts set by the government surveyor to mark the westerly corners of the claim were only 1,364.5 feet distant respectively from the easterly line of the claim; and, second, because the ore taken from beneath the surface of the Conkling claim was a part of the Crescent fissure vein which had its apex in defendant's Constitution, Cumberland and Monroe Doctrine claims, crossed the side lines of those claims in its course, and, on its dip, extended through the vertical planes passing through their end lines and beneath the surface of the Conkling claim to the Elephant stope, that the end lines of defendant's claims became their side lines, that defendant's claims were prior in time and superior in right to those of the owners of the Conkling claim, and that, therefore, the defendant was the owner of the ore taken from the Elephant stope. Upon final hearing the court below sustained each of these defenses and the plaintiff appealed.

E. B. Critchlow, of Salt Lake City, Utah (Pierce, Critchlow & Barrette, of Salt Lake City, Utah, William D. McHugh, of Omaha, Neb., and William H. King and William J. Barrette, both of Salt Lake City, Utah, on the briefs), for appellant.

William H. Dickson, of Salt Lake City, Utah (A. C. Ellis, Jr., Russell G. Schulder, O. W. Powers, and Thomas Marioneaux, all of Salt Lake City, Utah, on the briefs), for appellee.

Before SANBORN and SMITH, Circuit Judges, and POPE, District Judge.

PER CURIAM. It is a general, but not a universal, rule that monuments mentioned in a description of land prevail over courses and distances, and it was upon this rule that the defendant founded its first defense. The evidence produced to sustain it consisted of the field notes of the survey of the claim which were made on November 1, 1889, by the United States surveyor, which recited that a pine post 4 feet by 4 inches by 4 inches was set at its northwesterly corner and marked "U. S. 689 P. 3," and another at the southwesterly corner of the claim marked "U. S. 689 P. 4," that these posts were 1,500 feet distant from

the easterly line of the claim, the location of which is admitted, and that the area of the claim was 20.45 acres; and (2) the testimony of witnesses that they found these stakes years after the survey 1,364.5 feet distant from the easterly line of the claim. In addition to this testimony a large number of plats and field notes of other claims in the vicinity of the Conkling claim, and some other evidence, was introduced, but the testimony that these stakes were found by two or three surveyors, sometimes lying on the ground and sometimes standing in a mound of stones about 1,364.5 feet distant from the easterly line of the claim, is the most substantial and persuasive evidence that they were originally placed by the surveyor at about that distance from the easterly line.

[1] This testimony and all the other evidence upon this subject has been carefully read more than once and deliberately considered in view of the established rule that the finding of the chancellor should not be disturbed, unless it clearly appears that he has made a serious mistake of fact or has fallen into some plain error of law. The testimony presents two questions: First, may the plain and unambiguous grant by a patent of the United States of a tract of land be revoked or avoided in whole or in part by a collateral attack by means of evidence dehors the patent years after the grant; and, second, if it may be, does the evidence in this case clearly prove that it was not the intention of the parties to the patent that the United States should grant thereby a tract of land 1,500 feet in length, and that it should grant a tract of land only 1,364.5 feet in length, for, after all, the intention of the parties, if it can be lawfully and surely ascertained, must prevail. The court below was of the opinion that the first question did not arise in this case because the patent recited that whereas there had been deposited in the General Land Office "the plat and field notes of survey *. * * accompanied by other evidence whereby it appears that the Boss Mining Company did on the twenty-ninth day of December, A. D. 1890, duly enter and pay for that certain mining claim or premises known as the Conkling lode mining claim designated by the surveyor as lot No. 689 and bounded, described and platted as follows [as set forth in the statement preceding this opinion]: Now, know ye, that there is hereby granted by the United States unto the said Boss Mining Company, and to its successors and assigns, the said mining premises hereinbefore described," and that portion of the Conkling lode and all other veins, lodes and ledges the tops or apexes of which lie inside of the surface boundary lines of said granted premises in said lot No. 689 extended downward vertically: "* * * Provided that the right of possession to such outside parts of said veins, lodes or ledges shall be confined to such portions thereof as lie between the vertical planes drawn downward through the end lines of said lot No. 689;" and the opinion of the court below was that this reference in the patent to lot No. 689 imported into that patent and made a part of the description in the patent the field notes and the calls therein for the posts the field notes described as located at the westerly corners of the claim. In support of this position Rutherford v. Tracy, 48 Mo. 325, 8 Am. Rep. 104, Lodge's Lessee v. Lee, 6 Cranch, 237, 3 L. Ed. 210, and

Keith v. Reynolds, 3 Greenl. (Me.) 393, which hold that where a specific island, town lot, or farm is granted, followed by boundaries which include only a part of it, the entire island, lot, or farm will pass, were cited. Under these decisions, however, the grant of this lot No. 689 according to the plat, followed by a boundary of a part of the lot by courses and distances indicated by the field notes, would convey the entire lot according to the plat which showed the lot to be 1,500 feet in length, although the courses and distances included only a part of it, and that ruling would defeat the defense in hand.

[2, 3] When, however, the origin, nature and effect of a patent and the plain terms of the description in the one in hand are considered it becomes clear that the theory that the reference to the field notes and to the surveyor's number of the lot made the field notes and the calls therein a part of the description, is untenable. A patent of land within the jurisdiction of the Land Department of the United States, and this land was within its jurisdiction, is the judgment of that tribunal upon the evidence before it that the patentee is entitled to the land therein described and the conveyance of the legal title to the land to the patentee in execution of the judgment. The Land Department is a special tribunal vested with judicial power to hear and determine the claims of all parties to the public lands which it is authorized to dispose of, and its judgment, evidenced by its patent, is conclusive of the right of the claimant and of the United States to such land and of every issue which it was necessary for the land Department to decide in determining those rights. The validity, the extent and the boundaries of the claim in this case, and in every case, are unavoidable issues which it must adjudge in sustaining any part or all of the claim in hand, or any other claim of this character. Its adjudications of matters within its jurisdiction are like those of other judicial tribunals, impervious to collateral attack. They may be avoided only by a direct suit for that purpose on the ground of fraud or error of law, and there is no such proceeding here. Smelting Co. v. Kemp, 104 U. S. at pages 646, 666, 26 L. Ed. 875; King v. McAndrews, 111 Fed. 860, 863, 50 C. C. A. 29; Uinta Tunnel Min. & T. Co. v. Creede & C. C. Min. & M. Co., 119 Fed. 164, 166, 57 C. C. A. 200; Golden Reward·Min. Co. v. Buxton Min. Co. (C. C.) 79 Fed. 868, 874; Carson City Gold & S. M. Co. v. North Star Min. Co. (C. C.) 73 Fed. 597, 600; Doe v. Waterloo Min. Co. (C. C.) 54 Fed. 935, 940; Waterloo Min. Co. v. Doe (C. C.) 56 Fed. 685.

The applicant for the land and the patent in this case had the right under the acts of Congress to locate and purchase from the United States a mining claim 1,500 feet long and 600 feet wide, and it is conceded that it claimed and applied for a patent to a tract of these dimensions. In order to entitle it to the patent it was required to locate the tract it claimed and applied for so that its boundaries could be readily traced, section 2324, Revised Statutes of United States, to file in the proper land office an application for the patent together with a plat and field notes of its claim made by and under the direction of the Surveyor General of the United States showing accurately the boundaries of its claim, which should be distinctly marked on the

ground, to post a copy of such plat with a notice of its application for a patent on the land platted, to file an affidavit of two persons that the notice had been duly published 60 days, to file with the register of the land office a certificate of the United States Surveyor General that $500 worth of labor had been expended by the applicant or his grantors in improvements on the claim and that the plat is correct, and to file his affidavit that the plat and notice have been posted. Section 2325, Revised Statutes. Whether or not the applicant has complied with these and other conditions of his right to the land thus specified by the acts of Congress and is entitled to a grant of the land, is the ultimate question which the Land Department is empowered and required to decide in the issue of every patent for such a mining claim as that here in controversy. The proceeding in the Land Department is judicial in its character, in the nature of a proceeding in rem, and its judgment by default, where the proper notice of the application has been given, is as conclusive and impervious to collateral attack as its judgment after a contest. Golden Reward Min. Co. v. Buxton Min. Co. (C. C.) 79 Fed. 868; New Dunderberg Min. Co. v. Old, 79 Fed. 598, 25 C. C. A. 116.

[4-7] Now the proof is uncontradicted that the plat of this claim showed it to be 1,500 feet long and 600 feet wide. The field notes, that plat, proof that a copy of that plat was posted on the land and the certificate of the United States Surveyor General that the plat was correct were required to be, and the legal presumption is that they were, in evidence before the Land Department when it rendered its judgment. The patent itself recites that the plat and the field notes accompanied by other evidence were before it. The field notes recited that the claim was 1,500 feet long and 600 feet wide, that there was a post at each corner and described each post and its location. The plat portrayed the tract 1,500 feet long and 600 feet wide. The patent recites that there was other evidence. On all this evidence the department adjudged and conveyed to the patentee a tract "bounded, described and platted as follows," and then set forth a boundary by course and distance carefully describing the two posts at the east end of the claim mentioned in the field notes, and as carefully disregarding and omitting all reference to the two posts at the west end of the claim mentioned in the field notes and adjudging the second course to be "south sixty degrees and forty-five minutes west one thousand five hundred feet to corner No. 3," the third course to be "south twenty-one degrees and nine minutes east six hundred feet to corner No. 4," and the fourth course to be "north sixty degrees and forty-five minutes east one thousand five hundred feet to corner No. 1, the place of beginning," and adding: "Said lot No. 689 extending one thousand five hundred feet in length along said vein or lode and containing twenty acres and forty-five hundreths." Here was a direct and conclusive adjudication on its face (1) that the field notes and the posts and calls therein were not parts of the description in the patent, but were only a part of the evidence upon which the adjudication was based; (2) that the two posts at the easterly end of the tract mentioned in the field notes marked the easterly corners of the tract conveyed; and (3)

that the tract so conveyed extended 1,500 feet westerly from the easterly line on the courses stated in the description and contained 20.45 acres, without regard to the location of the westerly posts which were described in the field notes, but were not mentioned in the patent. This adjudication was impervious to collateral attack. The description contained in the patent was free from ambiguity and the field notes and parol testimony which were offered in the court below were incompetent in this suit indirectly to revoke and avoid the grant to the patentee of the westerly 135.5 feet of the 1,500 feet which were clearly adjudged and conveyed to it by the patent.

Nor is this all. The court is of the opinion that if all the evidence offered had been competent it would have been insufficient to overcome the strong presumption that the plain description in the patent was right, insufficient to overcome the facts that the plat showed the claim to be 1,500 feet in length and 600 feet in width, that the Surveyor General certified that the plat was correct, that the field notes recited that the claim was 1,500 feet in length and 600 feet in width, that the field notes, the plat and the patent each declare that the area claimed was 20.45 acres, that this is the area of a tract 1,500 feet in length and 600 feet in width, while the area of a tract 1,364.5 feet in length and 600 feet in width is nearly 2 acres less, and the persuasive presumption that the plain description in the patent expressed the actual intention of the parties to it. These considerations have left no doubt that the court below made a mistake in its finding that the patent did not convey the westerly 135.5 feet of the land described in it and have satisfied our minds that it conveyed, and the plaintiff now owns, the tract 1,500 feet in length and 600 feet in width so clearly described in it.

Nor has this conclusion been reached without a deliberate consideration of the general rule that in cases of conflict monuments prevail over courses and distances, and of the amendment of 1904 to section 2327 of the Revised Statutes (10 Stat. Ann. 235), which provides that:

"Where patents have issued for mineral lands, those lands only shall be segregated and shall be deemed to be patented which are bounded by the lines actually marked, defined, and established upon the ground by the monuments of the official survey upon which the patent grant is based. * * * The said monuments shall at all times constitute the highest authority as to what land is patented, and in case of any conflict between the said monuments of such patented claims and the descriptions of said claims in the patents issued therefor the monuments on the ground shall govern."

But the general rule is not without exception. It is but one of many rules for construing and applying descriptions in conveyances to the land described. The sole object of this and of all other such rules is to aid in ascertaining the land which the parties intended to convey, and where, as in the case at bar, the description in the patent is unambiguous, and the intent of the parties is clear beyond doubt to convey the tract so described, that intent must prevail over this or any other rule of construction or application, the only purpose of which is to aid in ascertaining such intent.

And there are many reasons why the amendment to the statute which has been quoted ought not to be permitted to revoke or modify

the grant of a patent which the United States unquestionably intended to make and did make, and which the patentee applied for, earned and received years before that amendment was enacted. The amendment was passed and approved 12 years after the United States had conveyed this land to its patentee, and it could not by its mere legislative fiat revoke that grant and take from him, or from subsequent purchasers of it from him, the land it had conveyed 12 years earlier, or any part of it. In the second place there is in this case no conflict between the courses and distances and the monuments named in the patent, and parties cannot be and ought not to be permitted to import into a clear and perfect description in the patent by parol evidence 19 years after its issue monuments not mentioned therein to create a conflict between those monuments and the courses, distances and clear description and area stated in the patent, and then by the aid of the amendment of 1904 to destroy or diminish by means of these imported monuments, the grant. It cannot have been the intention of Congress that this amendment should apply to a prior grant under such circumstances as this case presents. And finally the proof that the westerly posts of the official survey upon which this patent was granted were originally set only 1,364.5 feet distant from the easterly line of the claim is not of that certain and satisfactory character which would warrant a court in avoiding, so many years after the issue of the patent, the grant which the United States clearly made. The defendants cannot deprive the plaintiff of the land described in his patent by means of the proof of the finding of these old posts which was introduced in this case.

[8-10] We turn to the second defense. Does the evidence sustain the defendant's claim to the ore in the Elephant stope beneath the surface of the plaintiff's Conkling claim on the ground that this ore is a part of the Cresent fissure vein whose apex is found within and on its strike crosses the side lines of the defendant's Constitution, Cumberland and Monroe Doctrine claims, while on its dip it passes through the vertical planes of the end lines of these claims and beneath the surface of the Conkling claim? Upon the face of the patents this claim is baseless because the owner of a mining claim has no extralateral rights beyond the end lines of his claim extended vertically downward. The defendant concedes this, but invokes the exception to this rule that when by mistake the locator places his claim across instead of along the vein or lode which he discovers, so that the latter crosses the side lines of his claim, his side lines become his end lines and he may follow the lode or vein on its dip beyond the vertical plane of the end line of his claim. But this extralateral right is a special privilege, an exceptional right, and the burden was on the defendant to bring itself within the exception. The burden was on it to prove that the discovery vein in each of its three claims extended across and not along the claim, and that the locator by mistake placed each claim across instead of along its discovery vein. This burden rests on every party who claims a right not common to all which is given only when a prescribed state of facts shall exist

He must prove the existence of the prescribed facts. The "Edith," 94 U. S. 518, 522, 24 L. Ed. 167.

The evidence in this case established these facts: Each of the defendant's claims was patented on March 31, 1883. The plaintiff's claim was located in 1889 or 1890, and was not patented until 1892. The ore in dispute could not be reached by any lode or vein extending on its strike lengthwise of either of defendant's claims and on its dip through the vertical plane of any side line of any of these three claims. The record discloses no claim of the locator of either of these claims, or of any of his successors in interest that through the mistake of any of them the end lines were its side lines during 25 years after these claims were patented. Meanwhile the plaintiff's Conkling claim and many other surrounding claims were located and went to patent. Each of the defendant's claims is 1,500 feet long and 200 feet wide, and on each of them there is a discovery pit or cut near the center of the claim, and more than 400 feet northwesterly of the Cresent fissure, which crosses the claims on its strike about 100 feet northwesterly of the southeasterly end lines of the claims and extends on its dip through the vertical planes of those lines extended downward to the Elephant stope beneath the surface of the Conkling claim. The defendant introduced the testimony of witnesses that at various places beneath the surface of its claims where tunnels had been run and where explorations had been made no longitudinal veins had been found, but that small veins running crosswise of the claims and the large vein called the Crescent fissure vein had been discovered, and the defendant contends that by this testimony it has established by a preponderance of evidence the facts that the locator of each of these claims by mistake placed them across when he intended to place them along his discovery vein. But the portions of the grant beneath the surface of the defendant's claims, which its witnesses examined and in which they found no longitudinal veins, was but a small percentage of the entire ground beneath the surface of these claims. There was a discovery cut or pit on each claim. Witnesses estimated that these cuts were from three to five feet deep. They had caved in. The ground in and under them, or along the course where a longitudinal vein under them would extend, had not been explored or examined by any witness to such an extent that he could testify with actual knowledge that there was no longitudinal vein beneath them.

Defendant's counsel argue, however, that the testimony of these witnesses that they found no longitudinal veins in the small parts of the ground beneath the surface which they examined is sufficient, together with the opinions of these witnesses, to establish the facts that there are no longitudinal veins in the claims and that the only vein or lode there is or ever was in these claims is the Cresent fissure vein, and they insist that since, when these claims were located, nothing was required of the locator but the discovery of a vein or lode of rock in place and the marking of the boundaries of the claim, this evidence is sufficient to sustain the conclusion that the Cresent fissure vein was the discovery vein of each of these claims. The evidence upon the issue here under consideration is not stated and will not be discuss-

ed at length in this opinion, because that course would unduly extend it. It has, however, been carefully read and thoughtfully considered. The legal presumption is, and the probability is, that the locator of the defendant's claims thought he had discovered a longitudinal vein in each of these claims in his discovery cut or pit, or he would not have located his claim lengthwise of such a vein. The fact that he made his discovery pits more than 400 feet northeasterly of the apex of the Crescent fissure cross-vein, which dips southeasterly, and that he did not locate his claims lengthwise of that vein, convinces that the Crescent fissure vein was not his discovery vein, and that it was only a cross-vein in claims whose discovery veins ran lengthwise of the claims, and in the absence of the testimony of the locator himself, or of any witness who knew the facts and circumstances of the discovery of the veins in these claims and of their location, the existence and location of the discovery pits, the location of the claims across and not along the Cresent fissure, the 25 years that elapsed after the patents to these claims were issued before the locator or any successor in interest claimed that any mistake had been made in their location, the subsequent location and patent meanwhile of surrounding claims during these 25 years and the legal presumption that the locator of each of the defendant's claims discovered a vein and located his claim lengthwise thereof, converge with compelling power to force our minds to the conclusion that there is no preponderance of evidence in this case that the locator of any of the defendant's claims placed it crosswise of his discovery vein. And the result is that the end lines of these claims never became their side lines, and the defendant is without right to three-fourths of the ore which is, and to three-fourths of the ore which was, beneath the surface of the Conkling claim.

[11] The end lines of a claim as the locator places them, with the single exception of when by mistake he locates his claim across instead of along the vein he discovers, fix the limit beyond which he may not go in the appropriation of any vein or veins whose apex or apexes are found within the surface lines of his claim, and the end lines of the original discovery vein are the end lines of all the veins discovered within the surface boundaries of his claim. Section 2322, Revised Statutes; Walrath v. Champion Mining Co., 171 U. S. 293, 307, 308, 18 Sup. Ct. 909, 43 L. Ed. 170.

The conclusion which has been reached upon the investigation of the questions already discussed renders the other questions of law and fact in this case immaterial, and the decree below must be reversed, and the case must be remanded to the trial court for further proceedings consistent with the views expressed in this opinion,

And it is so ordered.