FELZ, Appellant, vs. ESTATE OF FELZ, Respondent.

*November 7, 1919—February 10, 1920.*

*Executors: Claims against deceased persons: Claim based on services rendered widow's husband: Wills: Agreement to devise: Termination: Question for jury: Deeds: Oral conditions: Trusts: Trial: Changing answers in special verdict.*

1. A claim founded upon services rendered to decedent's husband, also deceased, is unenforceable against the widow's estate where the husband's estate has been fully administered long prior to the widow's death.

2. Where a deed from a husband to his wife is absolute in form, an oral condition that she reconvey to plaintiff is void under sec. 2302, Stats., and parol evidence is not admissible to show that a trust was created.

3. In an action on a claim against a decedent's estate based upon an alleged contract whereby plaintiff was to take care of decedent for life upon an understanding that her property was, after her death, to belong to plaintiff, evidence that plaintiff was absent from the farm upon which decedent resided for more than four or five years is sufficient to show a termination of such agreement.

4. Oral testimony as to the contents of a letter claimed to have been received by the plaintiff from the deceased and since lost, is inadmissible to prove the contract, as the sending and receipt of the letter was a transaction and the contents a communication with a deceased person under sec. 4069, Stats.

5. The evidence in this case is *held* to make it a question for the jury as to whether plaintiff had an agreement with the decedent such as he alleges.
6. Where two witnesses testify positively to the existence of a promise by the deceased to leave her property to the plaintiff, the trial court was not justified in changing answers in the special verdict relating to the existence of such promise.

APPEAL from a judgment of the circuit court for Jackson county: JAMES O'NEILL, Circuit Judge. *Reversed.*

Action to recover the value of services rendered by plaintiff to George Felz, Sr., deceased, and to his widow, Anna Felz, deceased. Claim was filed in the county court of Jackson county against the estate of Anna Felz, who died in March, 1916, and it was therein sought to recover for services rendered her husband, George Felz, Sr., who died in November, 1896, on the theory that Anna Felz had received a deed of her husband's lands with the oral understanding that she was to give them to plaintiff upon her death. The county court wholly disallowed the claim and the plaintiff appealed to the circuit court. That court refused to submit to the jury the claim of plaintiff in so far as it was founded upon services rendered to George Felz, Sr., whose estate was administered shortly after his death in 1896 and entirely closed long prior to the death of Anna Felz.

As to services rendered Anna Felz, plaintiff claimed under two separate agreements: one made just after the death of George Felz, Sr., in 1896, and another made in a letter from Anna Felz sent to plaintiff while he was in Minneapolis some time between 1899 and 1903, and reaffirmed after his return to the farm. Both these alleged agreements were to the effect that if he would stay and work the farm and take care of Anna till she died she would leave him all her property. The jury returned the following special verdict:

"(1) Did the plaintiff and his aunt, Anna Felz, after the death of George Felz, Sr., enter into a contract by the

terms of which plaintiff agreed to stay with his aunt as long as she lived and render services to her and in consideration thereof she promised to give plaintiff all her property real and personal at her death? *A.* Yes.

"(2) Did the plaintiff and his aunt, about the time he returned from Minneapolis, enter into a contract by the terms of which plaintiff agreed to stay with his aunt as long as she lived and render services to her and in consideration thereof she promised to give to plaintiff all her property at her death? *A.* Yes.

"(3) Or, at and after the time plaintiff returned from Minneapolis, did he stay with his aunt without any contract or agreement with her that he should be compensated for his services by his aunt giving him her property at her death, but with an agreement to work her place on shares? *A.* No.

"(4) If you shall have answered questions 1 or 2 'Yes' and found there was such a contract for compensation as stated therein, then answer the fourth question. But if you answer the third question 'Yes' you need not answer this question: How much was the value of the services of plaintiff for his aunt from and after the time he returned from Minneapolis to live with her and until her death over and above all payments or things of value received by plaintiff from his said aunt? *A.* $9,572.80."

Upon motions made after verdict the court changed the answers to questions 1 and 2 from "Yes" to "No," and the answer to question 3 from "No" to "Yes," and the answer to question 4 from "$9,572,80" to "$4,500," and entered judgment dismissing the complaint upon the merits, with costs. Plaintiff appealed.

*W. H. Frawley* of Eau Claire, for the appellant.

For the respondent there was a brief by *Perry & Perry* and *E. S. Jedney,* all of Black River Falls, and *P. M. Beach* of Eau Claire, and oral argument by *Mr. H. M. Perry* and *Mr. Beach.*

The following opinion was filed December 2, 1919:

Vinje, J. The court properly refused to submit to the jury any claim founded upon services rendered to George

Felz, Sr., because his estate was fully administered upon shortly after his death in 1896 and any valid claim against his estate could not be enforced against the estate of his widow dying years afterward. If the claim is sought to be sustained on the ground that Anna Felz received a deed of her husband's lands upon an oral condition that she should convey the same to plaintiff, such condition was void under sec. 2302, Stats. 1917, because the deed to her was absolute in form. Parol evidence was not admissible to show that a trust was created. *Illinois S. Co. v. Konkel,* 146 Wis. 556, 131 N. W. 842.

It is undisputed that plaintiff was away from the farm for at least a period of not less than four or five years and perhaps for seven or eight years at one time previous to his return from Minneapolis, the date of which he is unable to fix definitely but which he thinks was in 1903 or 1904. Such absence must be held to have terminated any agreement he may have entered into with Anna Felz shortly after the death of her husband in 1896, and it is clear that if he can recover at all it must be by reason of an agreement made with her after his return from Minneapolis.

Relative to the issue submitted in the second question, the plaintiff was permitted to give oral testimony of the contents of a letter he claimed he had received from *Anna Felz* while he was in Minneapolis, and which letter he said was lost, to the effect that therein she stated that if he would come back and stay with her as long as she lived she would give him her property. The reception of such evidence was error, as the trial judge later properly concluded in his opinion in the case. *Jackman v. Inman,* 137 Wis. 30, 118 N. W. 189, and cases cited; *Tolsma v. Tolsma's Estate,* 183 Mich. 314, 149 N. W. 1050. The sending and receipt of the letter was a transaction between plaintiff and the deceased. Its contents constituted communication between them. The letter if genuine and produced would have been admissible in evidence, but to permit oral testimony of its contents by plaintiff would be to emasculate sec.

4069, Stats., and would open the door wide for oral proof of any alleged letter from, or written contract with, a deceased in his lifetime and since lost. There would be no security from fraud or self-interest, for a lost written agreement could always be claimed. It is better that the loss of such a writing fall on him who sustains it than that the door which the statute closes should be permitted to be opened in this way.

The error in receiving parol proof of the contents of the letter was prejudicial error because it was the most cogent evidence upon which an affirmative answer to question 2 could be based, and the jury must have given it weight in arriving at their conclusion. Without such evidence a verdict could not be directed for either party, and therefore a question for the jury remained which they never passed upon freed from the material incompetent evidence. *Brader v. Brader,* 110 Wis. 423, 85 N. W. 681; *Jackman v. Inman,* 134 Wis. 297, 114 N. W. 489.

Exclusive of the testimony of the contents of the letter, is there credible evidence sufficient to sustain an affirmative answer to question 2? The trial court thought not and therefore changed the answer to that question. In so doing it is apparent he was influenced by the fact that there was very persuasive evidence that during the latter years of Mrs. Felz's life plaintiff received a part of the proceeds of the crop of the farm, and therefore he must have been renting it on shares, and such an arrangement was inconsistent with his claim that he was to work the farm and take care of his aunt till she died in consideration of her giving him all her property. It is quite clear that after her death plaintiff received from the administrator one half of the crop, hogs, and veal then on the farm.

Plaintiff, who is the nephew of George Felz, Sr., came from Germany in 1882, then only about fourteen years of age, to live with his uncle and aunt. At her death in 1916 he was unmarried and about forty-eight years of age. It does

not seem unreasonable that, in view of his age and needs for money over and above that absolutely necessary for his food, shelter, and clothing, his aunt in her declining years might be willing to give him one half the crop even though she recognized the agreement he claims she made with him. The two are not necessarily inconsistent, and in the event he had such an agreement as he claimed, his share of the crop could be regarded as payment *pro tanto* for services rendered and would reduce his compensation by that much. That being so, we are of the opinion that a jury must pass upon the question whether or not he had such an agreement as he claims with his aunt after he returned from Minneapolis. There is nothing in the record to substantiate any prior claims for service. If he can prove a contract such as he claims, then it would support a judgment for the reasonable value of his services, for it would rebut the presumption of gratuitous services (*Taylor v. Thieman,* 132 Wis. 38, 111 N. W. 229), and the law would substitute for the void promise to devise real estate for such services the valid promise to pay their reasonable value, as held in *Laughnan v. Estate of Laughnan,* 165 Wis. 348, 162 N. W. 169.

Among other evidence tending to support the claim that after plaintiff returned from Minneapolis the deceased agreed to give him her property if he would work the farm and take care of her till her death, is that of John Waterpuhl, who testified that about two years before Anna Felz died he heard her say to *George* that if *George* would stay with her all her living days the property belonged to him, and that he said he would stay; also that of Frank Matysik, who testified that some time after the death of George Felz, Sr., the farm was rented, "Then when the renters moved out *George* went on to the farm with her and he stayed with her until she died," though part of the farm was rented after that. She said to *George,* "Now, *George,* if you will stay with me as long as I live everything I got is yours, if

you stay with me as long as I live;" and he said "Auntie, I will stay." *George* says, "When I came back from Minneapolis the renters were there yet. We stayed at Matysik." So this conversation testified to by the witness must have taken place after *George* came back from Minneapolis and while he and his aunt stayed at Matysik's house. In view of this positive evidence by two witnesses of a promise by Anna Felz to leave *George* all her property if he would stay with her till she died, we think the trial court was not justified in changing the answer to question 2 from "Yes" to "No" and the answer to question 3 from "No" to "Yes." The result is that the judgment must be reversed and the case sent back for a new trial on the question of whether, after *George* returned from Minneapolis, Anna Felz promised to leave him all her property if he would stay with her till she died, and, if she did, what was the reasonable value of the services rendered her after that over and above any payments in cash or crops he may have received therefor.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.

A motion for a rehearing was denied, with $25 costs, on February 10, 1920.