### WUSTUM et al. v. KRADWELL.

(Circuit Court of Appeals, Seventh Circuit. December 20, 1920.)

No. 2799.

1. **Trusts ⬅⬞44(1)—In suit to establish title to stock in another's name, evidence held to support finding as to part only of the stock claimed.**

   In a suit by one who purchased corporate stock which was subsequently held in the name of defendant's deceased husband to establish plaintiff's title to part of the stock as purchased in his own behalf, evidence *held* to support a finding in his favor as to stock for which he exchanged an interest in a business, but insufficient as to stock for which he paid cash, as he did for that purchased for defendant's husband.

2. **Trusts ⬅⬞35(1)—Agreement to account for stock owned by another binding only to extent of stock owned, though larger amount was mentioned.**

   Where part of the stock in a corporation standing in the name of defendant's husband at the date of his death belonged to plaintiff, defendant's promise to account to plaintiff if he would permit the stock to appear in her name for some time was binding on her only to the extent of plaintiff's ownership, though in their negotiations a larger amount than that owned by plaintiff was mentioned.

3. **Courts ⬅⬞356—Under equity rule exclusion of evidence not assignable as error when character not stated.**

   Under equity rule 46 (198 Fed. xxxi, 115 C. C. A. xxxi) and rules 11 and 24 of the Circuit Court of Appeals for the Seventh Circuit (150 Fed. xxvii, xxxiii, 79 C. C. A. xxvii, xxxiii), the exclusion of a witness and the exclusion of questions asked other witnesses was not assignable as error where the character of the proffered evidence was not stated.

4. **Courts ⬅⬞356—Failure to state character of evidence excluded not cured by affidavit on motion for new trial.**

   Where the character of evidence offered was not stated as required by equity rule 46 (198 Fed. xxxi, 115 C. C. A. xxxi), the omission was not cured by an affidavit filed about two months after the decree in support of a motion for rehearing or a new trial.

5. **Witnesses ⬅⬞181—Admission of evidence of transaction with decedent not error when bar waived by common consent.**

   The admission of plaintiff's testimony concerning the contents of a lost instrument, if contrary to St. Wis. 1919, §§ 4069 and 4070, respecting testimony concerning transactions with parties since deceased, was not error where by common consent the bar of the statute was waived and evidence introduced as though there were no statute on the subject, especially where such testimony was of little weight on the matters involved.

6. **Witnesses ⬅⬞183—Testimony of transactions with decedent carefully scanned, though received without objection.**

   Testimony by interested parties concerning their transactions with deceased persons, even if received without objection, must be carefully scanned and received with caution.

Baker, Circuit Judge, dissenting in part.

---

⬅⬞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Eastern District of Wisconsin.

Suit by Frank A. Kradwell against Jennie Wustum and another. From a decree for complainant, defendants appeal. Modified and affirmed.

Bernard V. Brady and Lawrence A. Olwell, both of Milwaukee, Wis., for appellants.

Edward M. Smart, of Milwaukee, Wis., for appellee.

Before BAKER, ALSCHULER, and PAGE, Circuit Judges.

ALSCHULER, Circuit Judge. Appellant Jennie Wustum complains of a decree of the District Court which requires her to turn over to appellee Frank Kradwell 191¾ shares of the stock of Lakeside Hotel Company of Racine, Wis., which came to her under the will of her deceased husband, C. A. Wustum.

Wustum was a man of ample means, aged about 66 at death, in March, 1916, and for some years had practically retired from business. Appellant, his wife, was nearly the same age, and, save for an adopted son who did not reside with them, they were childless. Appellee Kradwell, about 20 years younger, unmarried, was engaged in the drug business with his brothers, under the name of Kradwell Drug Company, operating some stores in and about Racine, where all concerned resided. For some years the Wustums had taken a very great interest in appellee, who was often at their home, frequently slept there, in a room which was known as "Frank's" room, and came to be regarded by them very much as would be a son. From time to time during several years, both before and after the transactions herein referred to, they made him gifts, some of them quite expensive, and at Wustum's funeral he seemed, next to the widow, to be the chief mourner.

Somewhere about 1911, after some years of this intimacy, Wustum conceived the idea of acquiring the stock of the Lakeside Hotel Company, which owned the largest hotel at Racine, but which had not theretofore proved profitable. To what extent this conception was influenced by a desire to benefit appellee does not definitely appear; at least the evidence thereon is contradictory, some witnesses indicating a purpose expressed by Wustum to establish Kradwell in a good business, into which Wustum seemed to have faith the hotel could be developed. In the presence of a number of friends and associates, including Kradwell, the proposition of acquiring the stock was discussed. Wustum did not deem it best that it should appear he was after the stock, as this might incline holders to raise their price. He suggested that the work be done by Kradwell, and the stock as acquired be transferred to one Bacon as trustee, and this was the general plan adopted. Something over 300 shares—a considerable majority of the outstanding stock—was acquired, practically all except 143½ shares which were held by two men who declined to sell, and who, so far as the record shows, still hold their stock. The stock as acquired was turned over to Bacon and certificates issued to him, and later when

all obtainable had been acquired he surrendered his certificates, and new certificates for all of it were taken out by Wustum. Bacon held one share and Kradwell two shares in their names respectively to qualify them as directors; Wustum retaining physical possession of the certificates. For a number of years up to March 6, 1916, when Wustum suddenly died, Kradwell was a director and the secretary of the company, and latterly had more or less to do with the management of the hotel. He received a salary most of the time, having quit the drug business. The theory of the bill is that certain of the stock so acquired and passing to Wustum was in fact acquired by Kradwell for himself with Wustum's knowledge and consent, and that on Wustum's death his widow, who knew all the facts, but being desirous of controlling for a time all the stock as her husband had done, agreed with Kradwell that all the stock should be issued in her name, and that she would in time transfer to him that which was his.

[1] The main controversy here is in regard to 163½ shares of the stock owned or controlled by one Carpenter. As to this the undisputed facts are that, with the knowledge of Wustum, Kradwell entered into negotiations with Carpenter for the exchange of his (Kradwell's) interest in the Kradwell Drug Corporation for this hotel stock. Carpenter was willing to enter into such a deal provided he could dispose of the drug store interest. Further negotiations were had which resulted in a three-cornered deal whereby Kradwell's interest in the drug company should pass to Kradwell's brother, who in turn was to give his notes therefor to Carpenter's bank for $10,000; and these 163½ shares of hotel stock were to pass to Kradwell. This deal was consummated, and the certificates of the hotel stock were delivered to appellee, who turned them over to Bacon, who later transferred them to Wustum.

That originally the entire consideration for this Carpenter stock was supplied by Kradwell out of his own property is not an issue in the case. It was conceded and does not depend upon the testimony of Kradwell respecting transactions between himself and the deceased. We quite agree with the District Judge, who in his opinion stated:

"I was impressed with the idea that the plaintiff made a prima facie showing in establishing the transactions to which he was in fact a party where certain stock which has been referred to as the Carpenter-Robinson stock in fact came into his hands under circumstances establishing a title to the stock to him regardless of any transactions which he may have had with the deceased person; and that transaction * * * is in a way the point upon which this case in my judgment must turn."

Plaintiff in error undertook to show that Kradwell agreed with Wustum to take $3,000 for his drug store interest, notwithstanding his brother had obligated himself to pay Carpenter's bank $10,000 for it, and that Wustum actually paid him this much money therefor; but we believe the District Court was warranted in its conclusion that the evidence failed to establish such a transaction or such payment. We do not deem it unreasonable that Wustum was willing Frank Kradwell should have an interest in the hotel, nor that at first Wustum did not wish to be known in the transaction, and after all the then obtainable

stock had been acquired that he desired for the time being that the records show all the stock to be in him (Wustum).

Supplementing the influential fact that the consideration for this stock was supplied by Kradwell is the evidence of numerous disinterested witnesses that thereafter Wustum at different times stated Kradwell had a large interest in the hotel; such statements being shown to have been made from time to time quite up to Wustum's death. The apparent interest in the hotel company which Kradwell's trading for this stock would seem to have raised in him was evidently recognized by Wustum as subsisting in Kradwell; and as to these 163½ shares we believe the District Court was warranted in its finding that at the time of Wustum's death they really belonged to Kradwell.

Two other blocks of stock are involved, viz. Heinrichs, 26¼ shares, and Rowley, 3 shares. As to these all the evidence upon the subject is by Kradwell himself to the effect that they were bought with his own money. In corroboration of this assertion there appears nothing whatever except that Rowley testified Kradwell paid him in cash for his shares. This, however, does not distinguish this from most of the other purchases by Kradwell, admittedly for Wustum. In practically all Kradwell paid the seller cash, which he had by check or otherwise obtained from Wustum. His own account of these transactions is far from convincing. He says he had from time to time saved money while in the drug business, and that these savings, together with the surrender value of two life insurance policies which he cashed, amounting in all to about $4,800, he had kept in the drug store safe during all the time of the accumulation, and that he did not have any bank account. This, from a business man, does not carry conviction, and, if offered separate and apart from the other transaction, would far from sustain the undertaking to have declared as his own, corporate stock which some years before had been acquired and placed in the name of another. It cannot be said that, because the evidence requires the conclusion that the Carpenter stock belonged to him, therefore any other of the stock which he may say he paid for must likewise be decreed to him.

The testimony of the various persons as to statements made by Wustum, which would well be applicable to the large block of Carpenter stock, is not so definite or all-inclusive as necessarily to include other stock holdings which Kradwell claims. It is true some of these witnesses made mention of 187 shares, or about that many, but most of them were not definite or certain as to the number. Coupled with this is the fact that the sum total of these shares is not 187½, as was talked about, but is 192¾ shares. Kradwell's explanation that Wustum made a mistake in the addition and wrongfully assumed it to be 187½ shares is far from convincing. The employment by a few of these witnesses of the number 187 or thereabout is in all probability a matter of deduction reached by them, doubtless in all honesty, from having subsequently heard this figure spoken of, rather than through the mention of any definite number by Wustum. The most that can be said of the evidence of such witnesses is that Wustum had told them

in various ways and at different times that Kradwell had a large interest in the hotel, which indeed was the fact, if he owned this Carpenter stock. We do not therefore regard the evidence of these declarations by Wustum as necessarily corroborative of Kradwell's claim of ownership of the Heinrichs and Rowley stock; and as to these shares we are satisfied that the clear and manifest weight of all the evidence, with all the reasonable inferences therefrom, negatives the claim. Under these circumstances we feel constrained to disapprove the decree of the District Court respecting the Heinrichs and Rowley stock, notwithstanding the persuasiveness ordinarily attaching to a chancellor's findings upon issues of fact. American Rotary Valve Co. v. Moorehead, 226 Fed. 202, 141 C. C. A. 129 (7 C. C. A.).

[2] The complaint charges that shortly after Wustum's death appellant represented to him that it was highly desirable that all of the stock continue for a time to appear in her name, and that, if he would execute a paper declaring he had no interest in the stock, the executors would transfer it all to her, and that she would account to him for the shares he claimed to own, namely, 187½ shares, and that he was by her persuaded to sign and did sign such a paper. The answer denied any such promises or representations on her part, but admitted the signing of such paper by appellee, and stated that such paper was freely signed by him to make manifest the fact that he had no claim for any of such stock. Much evidence was adduced by both sides in support of their respective claims. Where the truth lies on the many controverted propositions it is difficult, indeed, to say. The District Court had of course the advantage of hearing and seeing the witnesses, and its conclusions on the controverted facts are entitled to very great weight.

In view of the long and close relation between the parties, it is not at all unreasonable that appellant might have asked, and appellee have given, what the latter says was requested, and for the purpose indicated. It is true there are other circumstances which make it seem very strange that the one should ask, or the other give, such a paper, especially in view of the charges and countercharges they respectively make, that immediately after the death of the deceased each proceeded to lay the foundation—the one for asserting an unfounded claim to the stock, and the other for defeating a just claim thereto—each accusing the other of having improperly taken keys, and abstracting from private apartments and the hotel safe papers and documents which the other claims would have substantiated his or her contentions in regard to the stock in question. But, accepting the view of the District Court that it is more likely that the disclaimer was signed under the circumstances and for the purposes indicated by appellee, and that there was in fact some promise by appellant of the general nature asserted by Kradwell, we do not believe that this promise would be binding any further than to the extent of Kradwell's ownership in the stock, and that, even though 187½ shares were mentioned in these oral talks between Kradwell and Mrs. Wustum, if his provable interest at the time of Wustum's death did not in fact exceed 163½ shares, the undertaking should not be held binding beyond that number.

[3, 4] Complaint is made of the alleged exclusion by the court of one Gittens as a witness. It seems that he as attorney for appellant was conducting the hearing of the cause. When his testimony was offered the court stated that, being attorney in the case, he could not be a witness, and further said that he ought not to wish to be a witness. In response Mr. Gittens, acting as attorney, said "No," and this ended the incident. From this it would appear that the undertaking to have him testify was abandoned. But, even if persisted in, the assignment of error in this respect is not in compliance with equity rule 46 of the Supreme Court (198 Fed. xxxi, 115 C. C. A. xxxi), which requires the character of the proffered evidence to be stated, nor with rules 11 and 24 of this court (150 Fed. xxvii, xxxiii, 79 C. C. A. xxvii, xxxiii). substantially to like effect. See, also, Herencia v. Guzman, 219 U. S. 44, 31 Sup. Ct. 135, 55 L. Ed. 81. The affidavit of Gittens, filed with a number of others some two months after the decree. in support of a motion for rehearing or a new trial in the cause, does not supply this omission. A rehearing or new trial was, at best, in the discretion of the court. But we may say in passing that, if what was there disclosed be considered as the proffered testimony of Gittens, we do not consider it of such significance as would in any event warrant reversal on account of its exclusion.

The court refused to permit certain witnesses on behalf of appellant to testify to statements to them by Wustum as to who owned the hotel stock; such statements not being in the presence of appellee. The error assigned on such action of the court is subject to the same objection as the proffered Gittens' evidence. Nothing appears to indicate the nature of the rejected evidence. and for this reason alone such assignment of error must fail.

[5] It is maintained that serious error against appellant intervened in permitting Kradwell to testify to the contents of an alleged lost paper signed by Wustum agreeing to transfer 187½ shares of stock to Kradwell. The latter testified to having drawn such a paper, which both signed a few months before Wustum's death, and that it was given to Kradwell who put it in a small lock box in the hotel safe to which he (Kradwell) had the only key, although the box contained other papers in which Wustum had an interest, namely, hotel insurance policies and plans for improvement of the hotel. It was as to the key of this compartment that there was much testimony offered on both sides primarily with the view to raising the presumption that, in the interest of Mrs. Wustum, papers were abstracted therefrom which were of benefit to Kradwell, notably the alleged paper under consideration. It was testified by him that he had searched for the paper and that it was lost, and against objection he was permitted to state the contents thereof as follows:

"For the sum of $1 and other valuable considerations I hereby assign, transfer, and turn back to F. A. Kradwell certain shares of stock in the Lakeside Hotel Company."

It is claimed the admission of this evidence was in contravention of sections 4069 and 4070 of the Wisconsin Statutes, respecting testi-

mony concerning transactions with persons since deceased. The com‑
petency of the testimony is asserted on the ground that the proof of
the existence and contents of a lost instrument, which but for the loss
would be admissible in evidence, is not evidence of a personal transac‑
tion with the deceased, the admission of which the statutes exclude,
and in support of the position there is cited Daniels v. Foster, 26 Wis.
686, and Sawyer et al. v. Choate, 92 Wis. 533, 66 N. W. 689. Appel‑
lant, however, relies on the decision of the Supreme Court of Wis‑
consin in Felz v. Felz's Estate reported in 170 Wis. 550, 174 N. W.
908, wherein it is ruled that one who is by the statute prohibited from
testifying to transactions with the deceased may not by his testimony
establish the existence and show the contents of a lost instrument of
writing executed by deceased, concerning such transactions with the
deceased. It is pointed out, however, that this last decision was not
rendered until after the decree in this case, and that the federal
court must be governed by the law of Wisconsin as it was interpreted
before the Felz Case.

In our view of the situation, however, it is not necessary to go into
these various propositions. We gather from an examination of the
entire record that it was quite as important to appellant, and possibly
more so, to give evidence of all that had transpired with the deceased,
as it was to appellee, and after this particular piece of evidence had
been adduced counsel on both sides, without objection, went very fully
into many transactions with the deceased other than that relating to
this paper. When it became apparent that, as to the Carpenter stock,
appellee had by undoubtedly competent evidence made a prima facie
case, it was likewise apparent that appellant, to establish her claim
that Wustum had paid Kradwell $3,000 for his drug store stock, might
also wish to adduce testimony which the statutes would bar. The
court suggested that, as transactions with the deceased had been gone
into both with and without objection, it might be well to have the en‑
tire matter gone into, and thereupon counsel for appellant said:

. "I do not want to hold anything away from the court. I want to assist
the court in getting at the facts. * * * We have no objections at all."

One can scarcely study the record without concluding that, notwith‑
standing the initial objection referred to, each side assumed it would
reap the greatest advantage from going into all the transactions with
the deceased, and that by common consent the bar of the statute
was waived, and the evidence proceeded as though there were no stat‑
ute on the subject.

[6] Appellee's right to the 163½ shares was established quite inde‑
pendently of his testimony concerning the paper. Indeed, there are
some discrepancies and inconsistencies as to the alleged paper which,
to say the least, lend little, if any, corroboration to appellee's conten‑
tion. The quite general existence of statutes of this nature is not out
of whim or caprice of the Legislature, but is presumably based on wise
policy, justified by long experience; and such testimony by interested
parties concerning their transactions with deceased persons, even if re‑
ceived without objection, in the very nature of things, must be carefully

scanned and received with caution. It happens that the paper as testified to does not state any number of shares. Kradwell's testimony of what subsequently transpired between him and Mrs. Wustum, wherein he did state the number of shares would not be proof of anything beyond what he then told her. It would not establish the contents of the alleged lost instrument, which Kradwell said was drawn and signed about January 1, 1916, and which he had not since seen. We can say of the instrument as testified to that it does not of necessity refer to other than the Carpenter stock, any more than do most of the statements of the deceased to the various witnesses; and, while serving neither to sustain nor defeat appellee's case as to the Carpenter stock, it does not tend materially to establish his claim to the other stock.

We conclude that the decree of the District Court should be modified by excluding from its operation the Heinrichs and Rowley shares, and including therein only stock representing the Carpenter shares. This will award to appellee the two shares already issued and standing in his name, and 161½ shares in manner and form as in the decree provided. The cause will be remanded for such modification of the decree, and, as so modified, the decree is affirmed. Appellant and appellee shall each pay one-half the costs of the appeal.

BAKER, Circuit Judge (concurring in part, dissenting in part). Questions of law arising on assignments of error respecting admission and rejection of evidence are correctly decided, in my judgment; but I protest most earnestly against the majority's action in setting aside certain findings of fact made by the chancellor after he had heard the parties and their witnesses in open court.

When Wustum died, certificates for over 300 shares were standing in his name. Appellee's claim was that he was the owner of 191 of those shares during the last five years of Wustum's life. Appellant, Wustum's widow, had new certificates made out in her own name. The chancellor found that this was done with knowledge on her part that appellee owned the Carpenter, the Heinrichs, and the Rowley stock (erroneously taken by Wustum and these parties as aggregating 187 shares instead of 191), and with her promise to assign the certificates to appellee after they had served her show purpose. Appellant's position was that appellee had no interest in any of the stock standing in Wustum's name. Credibility was necessarily the determining factor. The tension of the courtroom, the eyes, voices, hands of those testifying are not preserved in the printed record.

My Brethren accept the finding that appellee owned the Carpenter stock; but they reject his oath that he paid for the Heinrichs and the Rowley stock with his own money. It is admitted that he paid cash for these shares. If it was not true that he surrendered two life insurance policies to get his own cash for this purpose, astute counsel for appellant would have followed the trail and exposed him. Nothing in the record impeaches his having the money unless it is his confession that he kept his cash in his safe and had no bank account. However prudent it may be to bank one's cash, it is a harsh rule that my Brethren

are imposing upon the trial court, namely, that a person who keeps his cash in his own safe has no cash.

But appellee is corroborated in many ways.

If his claim to the Carpenter stock was false, the chancellor would have looked askance at his other claims, recalling the maxim, "Falsus in uno, falsus in omnibus." Of course it is not inevitable that the testimony of a witness who is wrong in one respect must be totally discarded. And of course my Brethren are right in saying that appellee's claim to the Heinrichs and the Rowley stock was not necessarily to be accepted by the chancellor simply because his claim to the Carpenter stock was supported by what the chancellor deemed the preponderance of the testimony. But the truth of the Carpenter claim bore upon the truth of the other claims, not as a principle of law, but as a psychological consideration to which the chancellor was entitled to give weight.

Credible witnesses, unimpeached on the record, whose impressiveness of manner we cannot know, testified that Wustum had repeatedly declared that appellee owned 187 shares or about that number. Their testimony, accepted by the chancellor, is rejected by my Brethren. 187 and 162 are not idem sonans. If Wustum said 162 or about that number, these witnesses could not have understood him as saying 187. But their testimony is rejected on the conjecture that it "is in all probability a matter of deduction reached by them, doubtless in all honesty, from having subsequently heard this figure spoken of, rather than through the mention of any definite number by Wustum." This strikes me as an unwarranted reflection on the intelligence and veracity of the witnesses and on the integrity of appellee and his counsel.

Appellee had the opening of the evidence. He testified to the contents of lost or stolen documents which he said would show his ownership of the 187 shares, meaning the Carpenter, the Heinrichs, and the Rowley shares. A witness who contemplated perjury might feel some degree of safety in narrating a parol transaction. If he intended to state falsely the contents of a document, which he was implying had been stolen by his adversary, he would have to face the possibility of being destroyed by the production of the document while he was yet on the witness stand.

But why pursue further the question of credibility on the printed record? The burden is not mine to demonstrate my Brethren's error. The findings of the chancellor are presumptively correct. They are supported by evidence. The burden is on my Brethren to establish clearly that the chancellor erred in weighing conflicting testimony, giving him the benefit of the fact that he saw and heard the witnesses in open court. As to the weight to be given to a chancellor's finding so made, see Davis v. Schwartz, 155 U. S. 631, 15 Sup. Ct. 237, 39 L. Ed. 289, and numerous prior cases therein cited; Adamson v. Gilliland, 242 U. S. 350, 37 Sup. Ct. 169, 61 L. Ed. 356; Estep v. Kentland Coal & Coke Co., 239 Fed. 617, 152 C. C. A. 451; Semidey v. Central Aguirre Co., 239 Fed. 610, 152 C. C. A. 444; United States v. Grass Creek Oil & Gas Co., 236 Fed. 481, 149 C. C. A. 533; Columbia Graphophone Co. v. Searchlight Horn Co., 236 Fed. 135, 149 C. C. A. 345;

Wilson v. Sands, 231 Fed. 921, 146 C. C. A. 117; Conkling Mining Co. v. Silver King Coalition Mines Co., 230 Fed. 553, 144 C. C. A. 607; American Rotary Valve Co. v. Moorehead, 226 Fed. 202, 141 C. C. A. 129.

In Adamson v. Gilliland, supra, the trial judge heard the conflicting oral testimony of the parties and their witnesses and resolved that conflict in favor of the plaintiff. On the printed record the Circuit Court of Appeals for the Eighth Circuit (227 Fed. 93, 141 C. C. A. 641) found that the testimony of the defendant and his witnesses sustained the defense beyond any reasonable doubt; and the Supreme Court reversed that finding on the ground that, when the finding of the judge who saw the witnesses "depends upon conflicting testimony, or upon the credibility of witnesses, or so far as there is any testimony consistent with the finding, it must be treated as unassailable."