NEHLS, Respondent, v. MEYER and another, Appellants.

*March 4—April 7, 1959.*

For the appellants there was a brief by *Cavanagh, Mittelstaed, Sheldon, Heide & Hartley* of Kenosha, and oral argument by *William A. Sheldon.*

For the respondent there was a brief by *Vaudreuil & Vaudreuil* of Kenosha, and oral argument by *Leo E. Vaudreuil.*

FAIRCHILD, J.   The crucial findings made by the trial court were that there was valuable consideration for the 1941 deed to Lydia; that Lydia was not in a confidential relationship to Elroy; and that she is not a constructive trustee for the estate of Emma Meyer, their mother.   These findings could perhaps be interpreted as findings that the conversations related by Elroy did not take place and since Elroy had the burden of proof, Elroy might be unsuccessful in attacking such findings upon appeal.

The opinion filed by the court, however, indicates that in making the findings the court considered that Elroy's testimony constituted parol evidence tending to establish an ex-

press trust and therefore disregarded the testimony, most of which had been taken subject to Lydia's objection.

The court relied upon *Illinois Steel Co. v. Konkel* (1911), 146 Wis. 556, 131 N. W. 842, and *Felz v. Estate of Felz* (1920), 170 Wis. 550, 174 N. W. 908. Those decisions stated the general rule that only clear and convincing evidence in writing can engraft a trust upon a deed which is absolute upon its face.

The gist of Elroy's case, however, is not an attempt to obtain enforcement of an express trust. He relies principally upon *Masino v. Sechrest* (1954), 268 Wis. 101, 66 N. W. (2d) 740. That decision points out that a constructive trust is a device of a court of equity to prevent unjust enrichment which arises from fraud or the abuse of a confidential relationship. The statute of frauds will prevent enforcement of an oral express trust, but in a proper case a constructive trust will be employed to accomplish justice. It was said at page 110, "Since a constructive trust, which is based on unjust enrichment, is construed from the circumstances surrounding the transaction, independent of the intention of the parties, parol evidence of the agreement is admissible, not to enforce the agreement, but to prove that the grantee has been unjustly enriched by his repudiation of the agreement. The proving of the contract is incidental. The purpose of the parol evidence is to prove unjust enrichment, and in the instant case, the unjust enrichment is alleged to have arisen from a breach of an agreement arising out of a confidential relationship."

The *Masino* decision, particularly at page 111, indicates that where a deed was given by a mother to a daughter and it is found that the purpose was to effect a family settlement, the close relationship, the giving of the deed, and the purpose are sufficient to support a finding that a confidential relationship existed.

Elroy's testimony, if believed, shows that Lydia had knowledge at the time of the 1939 conveyance of the fact

that Elroy held title solely for the benefit of the mother. His testimony also shows that when the 1941 deed was delivered Lydia promised to hold title upon the same terms, and in fact to reconvey to Elroy after the reasons which made it more convenient for her to hold the title had ceased to exist.

Lydia's counsel argues that a constructive trust could not be imposed in these circumstances without proof that at the time of the delivery of the 1941 deed the arrangement for Lydia's holding mere nominal title was made between the mother and Lydia. Obviously each party is prevented from testifying in his own behalf as to transactions with the mother. We think it is unnecessary, however, for Elroy to prove that his mother was a party to the arrangement whereby Lydia obtained title if he is able to prove that Lydia knew that his own title was nominal rather than beneficial. Several cases from other states tend to support this proposition.

In *Austin v. Austin* (1937), 135 Me. 155, 191 Atl. 276, upon an oral agreement brothers Frank and Herbert had conveyed their interests in property to their sister Alida upon an agreement that Alida would return it to Frank and Herbert in equal shares. Alida later conveyed all of the property to Herbert and his wife. The wife, as well as Herbert, knew of Alida's agreement. A constructive trust in favor of Frank was impressed upon the property to the extent of his original interest. The court held that the constructive trust follows the real estate into the hands of any subsequent holder who is not a *bona fide* purchaser thereof without notice.

In *Metzger v. Metzger* (1940), 338 Pa. 564, 571, 14 Atl. (2d) 285, a son conveyed property to his mother upon an oral agreement to reconvey when his marital troubles cleared up. Thereafter the mother conveyed the property to her daughter who had knowledge of the arrangements between the mother and the son. It was held that a confidential relationship existed between the son and the mother and that ". . . since the daughter knew of the mother's agreement

with the son respecting the property in dispute, the subsequent conveyance to her in no way adversely affects the son's rights, for, even a purchaser from a trustee is chargeable with the same trusts as the trustee from whom he purchases with notice of the trust."

In *O'Shea v. O'Shea* (1943), 143 Neb. 843, 11 N. W. (2d) 540, John O'Shea conveyed property to his sister Ella with the oral understanding that Ella was to will the land to John if Ella predeceased him. The court found that there was a confidential relationship between John and Ella and that a brother, Edward, was fully aware of the relationship and of the conditions under which Ella held title. Before Ella's death she conveyed the property to Edward. The court decided that Edward held title under a constructive trust for John.

It is plain from these decisions that the party seeking to establish the constructive trust has the burden of proving the oral arrangements by clear and convincing evidence.

We conclude that the judgment appealed from cannot be supported upon the theory that Elroy's testimony as to the conversations with his sister was inadmissible. Upon remand, whether the trial court reconsiders the matter upon the record already made or reopens the record for additional testimony is a matter which should be left to the sound discretion of the court.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings consistent with the opinion filed herein.