UNITED STATES of America, Plaintiff–Appellee,

v.

Dennis P. MARX a/k/a Dennis Martin, Big "D," Dennis Burtell, Defendant.

Appeal of Mary Ann MARX.

No. 87–1715.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 7, 1987.

Decided April 6, 1988.

As Amended April 12, 1988.

William H. Theis, Chicago, Ill., for defendant.

Melvin K. Washington, Asst. U.S. Atty., Patricia A. Gorence, U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before CUMMINGS, CUDAHY and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

Petitioner Mary Ann Marx seeks to recover her asserted interest in property forfeited by her husband Dennis Marx to the federal government. Dennis pled guilty to various counts of an indictment arising out of a drug conspiracy, including a count of engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848, was sentenced to a prison term of twenty-five years and, under 21 U.S.C. § 853(a), forfeited certain property, including sixty-seven shares of Accurate Brass and Aluminum Foundry, Inc. ("Accurate"), to the United States. In addition to providing for the criminal forfeiture of certain property, Section 853 also provides that any person, other than the defendant, asserting a legal interest in the property that has been ordered forfeited may petition the court for a hearing to adjudicate the validity of her alleged interest in the property. 21 U.S.C. § 853(n)(2). Pursuant to this Section, Mary Ann petitioned the court and asserted her interests in the Accurate shares under three separate legal theories: (1) marital property, (2) a constructive trust, and (3) a resulting trust. Following a two-day hearing, the district court found that Mary Ann did not participate in or have knowledge of her husband's illegal activities, but it nevertheless concluded that she had not established her interests by a preponderance of the evidence, see 21 U.S.C. § 853(n)(6)(A), and denied the petition. We reverse and remand.

I

The forfeited property in dispute is sixty-seven shares of stock in Accurate that represent 100 per cent ownership of the corporation and at the time of the forfeiture were titled in the name of Dennis Marx. Accurate was incorporated in 1964 and initially issued fifty shares, twenty-five titled in the name of Dennis Marx and twenty-five in the name of Mary Ann's father, Steven Andracek. Although the Marx shares were titled in Dennis' name alone,

both Dennis and Mary Ann testified[1] that they regarded the business as belonging to both of them. As Dennis stated, "she had half of the headaches and half the problems, so I assumed if there was any benefit, she had half the benefit." Asked why, if they believed the shares belonged to both of them, the shares were titled in only Dennis' name, Mary Ann and Dennis each testified that it was a convention of the times, that in 1963 lawyers drew up legal documents in the man's name.

Each of the original fifty shares cost $100. The $2,500 consideration for the shares titled in Dennis' name was paid out of the proceeds of the sale of pieces of heavy equipment owned by M & M Excavating. M & M Excavating was a small business run between 1959 and 1963 by the Marxes and a war "buddy" of Dennis. During that period Mary Ann worked both as a bookkeeper for M & M and as a registered nurse. She worked for M & M without compensation and poured part of her nursing earnings into the struggling M & M. These earnings from Mary Ann's nursing contributed to the purchase price of the M & M equipment later sold to acquire the twenty-five shares in Accurate.

In 1967, Accurate issued ten additional shares, again titled to Dennis alone. The consideration for these ten shares came from the proceeds of the sale of a home that was titled jointly in both Dennis' and Mary Ann's names. Mortgage payments on the home had been made in part with Mary Ann's outside earnings.

In 1967 or 1968, Mary Ann's father gave his wife, Mary Andracek, his twenty-five shares of Accurate stock. In 1970, Mary Andracek entered into a written agreement with Dennis to sell him the twenty-five shares at the original price of $100 per share. Under the terms of the agreement, title to the twenty-five shares transferred to Dennis immediately but was subject to return if he failed to make payments of $200 per month on the $2,500 purchase price. Dennis ultimately paid only $500, the price of only five of the shares, again

selling equipment of M & M Excavating to finance the purchase.

Although Dennis still owed her $2,000 for the twenty remaining shares, Mrs. Andracek told him that he need not pay the remainder because she was giving the twenty shares to Mary Ann. She testified that she told Dennis to hold the shares for Mary Ann, and that he stated that although the stock remained in his name, he understood the shares were a gift to Mary Ann from her mother.

The preceding narrative accounts for only sixty of the sixty-seven outstanding shares of Accurate. The record does not reflect and neither the parties nor the district court mention how and with what assets Dennis acquired the last seven shares.

## II

■ Mary Ann contends that she has a presumptive one-half interest in all property acquired during her marriage to Dennis, regardless of whether she or her husband holds title. As a result of this presumption she claims a legal interest superior to that of the government in thirty-three and one-half of the sixty-seven shares forfeited. Under the applicable Wisconsin law, the district court correctly rejected this claim.

Wisconsin's new Marital Property Act, Wis.Stat. ch. 766 (1986), expresses "the intent of the [Wisconsin] legislature that marital property is a form of community property," Wis.Stat. § 766.001(2), and states that all property is presumed to be marital property in which each spouse has a present undivided one-half interest. Wis. Stat. § 766.31(2) and (3). Mary Ann, however, cannot rely on this statute to support her contentions. The federal criminal forfeiture statute requires the court to determine Mary Ann's interest "at the time of the commission of the acts which gave rise to the forfeiture of the property." 21 U.S. C. § 853(n)(6)(A). All of Dennis Marx's drug activities occurred before the effective date of the new Marital Property Act, January 1, 1986. Therefore Mary Ann's

1. Because Dennis is now serving his prison sentence for the crimes that led to the forfeiture, his deposition, taken via tele-conference on March 11, 1987, was introduced at the hearing.

interest must be determined under the prior statute, Wis.Stats. § 767.255,[2] and the cases interpreting that section.

■ Relying on Section 766.25, the district court dismissed Mary Ann's argument that she has a presumptive one-half interest in marital property during the marriage. At a pre-trial hearing the district court held that, unlike the new Section 766.31 that grants a present property interest during the marriage, Section 767.255 provided a property interest only upon a judgment of annulment, divorce or legal separation as to property titled in the husband's name. Under Section 767.255, a wife has no property rights until a court creates those rights in a divorce proceeding. Because Mary Ann and Dennis were married at the time of the acts giving rise to the forfeiture, and are still, Mary Ann has no interest in the shares titled to Dennis.

Mary Ann urges a different interpretation of Section 767.255. She argues that Wisconsin adheres to a partnership theory of marriage that grants the non-titled spouse more than an inchoate right in marital property that comes into existence only upon divorce. The cases she cites in support of her interpretation do recognize marriage as a partnership and marital property as partnership property, but they do so in the context of the division of property in a divorce proceeding. *Krueger v. Wisconsin Department of Revenue*, 124 Wis.2d 453, 369 N.W.2d 691 (1985) (transfers of property at divorce are not taxable on the ground that the spouses were equitable co-owners of the property); *Lacey v. Lacey*, 45 Wis.2d 378, 173 N.W.2d 142 (1970) (the division of property upon divorce rests upon the concept of marriage as a shared enterprise or joint undertaking—a partnership); see also *Savings and Profit Sharing Fund of*

*Sears Employees v. Gago*, 717 F.2d 1038, 1044 (7th Cir.1983) (recognizing that the effect of Section 767.255 is that upon divorce all non-exempted property is presumptively subject to equal distribution). She does not cite, and we have not found, any cases affecting a division of marital property outside the context of a divorce proceeding.

In the absence of supporting case law outside the context of divorce, Mary Ann urges us to consider the fact that with her husband in prison for at least the next fifteen years[3] she needs her share of marital property at least as much as a woman who is undergoing a divorce and asks us to look to general partnership law. Although her argument is compelling, it does not state the law of Wisconsin at the time of Dennis' illegal acts. If Mary Ann's interpretation of the prior law is correct, then the new Act is merely a codification of the preexisting law with no substantive effect. However, this is not the case. The new Act sharply differentiates between marriages occurring before and after the determination date of the new Act and property acquired before and after the determination date, emphasizing the significance of the change in the law. Wis.Stats. § 766.31(6), (8) and (9). The express intent and language of the new Act undermine the interpretation Mary Ann urges. We affirm the decision of the district court rejecting her assertion of an interest in thirty-three and one-half shares on the basis of a marital property theory.

### III

■ Mary Ann also claims that her mother, Mary Andracek, gave Dennis twenty shares of Accurate stock to hold for Mary Ann. The district court mislabeled this a resulting trust argument.[4] Mary

---

**2.** Section 767.255 provided in relevant part: "Upon every judgment of annulment, divorce or legal separation, or in rendering a judgment in an action under Section 767.02(1)(h) [actions affecting the family], the court shall divide the property of the parties and divest and transfer the title of any such property accordingly."

**3.** Dennis was sentenced to a prison term of twenty-five years. The sentence was imposed

under 21 U.S.C. § 848 and under the terms of that Section he cannot be paroled and must serve a minimum of fifteen years in prison.

**4.** For distinctions between the theories of resulting and constructive trusts, see *In the Matter of Iowa Railroad Co. v. Moritz*, 840 F.2d 535, 544–545 (7th Cir.1988) (Illinois law), and *American National Bank and Trust Co. of Rockford, Ill. v.*

Ann labels it a constructive trust.[5] We hold that if the testimony of Mary Andracek and Dennis is credited, the gift by Mary Andracek to her daughter created an express trust with Dennis as trustee; then, if Dennis' illegal activity breached that trust, the express trust was converted to a constructive trust. In either case, at all times Mary Ann had an interest in the shares.

An express trust arises as a result of the manifestation of an intention to impose a duty. If the requisite intent is present, no particular form of words or conduct is necessary. *In re Estate of Horkan*, 273 Wis. 442, 78 N.W.2d 767 (1956). It is immaterial whether the person manifesting the intent calls the relationship a trust or whether she even knows that the relationship she intends to create is called a trust. In addition, if the evidence concerning the creation of the trust is clear and convincing, a written instrument is not necessary. *Swazee v. Lee*, 259 Wis. 136, 47 N.W.2d 733 (1951).

In this case, the uncontradicted testimony of two witnesses supports the creation of an oral express trust. Mary Andracek and Dennis both testified that Mrs. Andracek told Dennis that he need not pay her the $2,000 he owed her on the twenty shares of Accurate because she was giving the shares to Mary Ann. Although the stock remained titled in Dennis' name, both he and Mrs. Andracek understood that the shares were a gift to Mary Ann. Where the owner of property transfers it to another with a direction to transfer it or to hold or deal with it for the benefit of a third person, this may be a sufficient manifestation of intent to create a trust. 1 Scott, *The Law of Trusts* §§ 23–24 (3d ed. 1967 & Supp.1985).

The government attempts to cast doubt on Mrs. Andracek's testimony by suggesting that it may have been "inspired" by her situation as a widow living in Mary Ann's home (Br. at 26). However, Judge Curran's order does not state that he discredited Mrs. Andracek's or Dennis' testimony that such a gift had been made to Mary Ann in 1974. Absent any finding of lack of credibility, the gift testimony remains unrebutted. This testimony provides clear and convincing evidence of the creation of an express trust of twenty shares of Accurate stock to benefit Mary Ann.

Through his illegal activity Dennis may have breached this express trust. But when the trustee of an express trust commits a breach of that trust, a constructive trust may arise by operation of law as a remedial device. 5 *Scott on Trusts* § 461. Following this principle, the Supreme Court of Wisconsin upheld the imposition of a constructive trust in the context of a transfer of property from one family member to a second family member who promised, then breached the promise, to hold the property for the benefit of yet a third family member. *Masino v. Sechrest*, 268 Wis. 101, 66 N.W.2d 740 (1954).

In *Masino*, a mother deeded property to her daughter and son-in-law with the understanding that they would hold it for the benefit of the daughter's brothers and sisters. After her mother's death, the daughter and her husband repudiated the express trust under which they received the deed and claimed the property as their own. The Court held that the daughter's brothers and sisters "have an equitable claim on the *trust res* which they may realize through equity's provision for imposing a constructive trust based on unjust enrichment." *Masino*, 268 Wis. at 111, 66 N.W. 2d at 744 (emphasis in original). See also *Nehls v. Meyer*, 7 Wis.2d 37, 95 N.W.2d 780 (1959).

Under Wisconsin law, "the imposition of a constructive trust requires that the record in [the] case establish (1) unjust

---

*United States,* 832 F.2d 1032, 1035 (7th Cir.1987) (Illinois law).

**5.** She did not include this theory in her petition to set aside the forfeiture, but did advance a constructive trust argument in her Second Memorandum of Law filed in the district court. Her trial brief and proposed findings of fact and conclusions of law also relied upon a constructive trust argument. As the government did not object to her raising the argument in the district court, it is too late to assert that she should be barred from presenting it here.

enrichment on the part of the defendant,[6] and (2) abuse of a confidential relationship or some other form of unconscionable conduct." *First National Bank of Appleton v. Nennig,* 92 Wis.2d 518, 285 N.W.2d 614, 625 (1979). See also *Watts v. Watts,* 137 Wis.2d 506, 533–534, 405 N.W.2d 303 (1987); *Gorski v. Gorski,* 82 Wis.2d 248, 254–255, 262 N.W.2d 120 (1978). The record in this case establishes both elements. First, Dennis clearly was unjustly enriched by treating Accurate as his alone and subsequently using it in connection with his illicit drug activity. Second, an express trust establishes a confidential relationship, 6 *Scott on Trusts* § 2.5, and the trustee abuses the confidential relationship by misusing trust assets. See *e.g., Masino,* 66 N.W.2d at 742–743.

The district court refused to accord relief for four reasons: (1) Accurate's corporate records at no time listed Mary Ann as a shareholder and its income tax returns list Dennis as owning one hundred percent of the shares; (2) Mary Ann's brother spoke to their mother in 1982 about her shares in Accurate and she did not indicate to him that she had given the shares to Mary Ann; (3) neither the wills of Mary Ann and Dennis nor a trust agreement executed by Dennis refer to Mary Ann's interest; and (4) Mary Ann and other family members executed a warranty agreement on September 17, 1986, stating that Dennis was the sole owner of the sixty-seven shares of Accurate. We are not persuaded.

First, the fact that the corporate records do not show Mary Ann as owning any share is the reason why she is attempting to establish ownership through a constructive trust. A constructive trust is an appropriate equitable remedy when title is held in the name of another party. Thus the fact that title is held in Dennis' name precipitates, not defeats, Mary Ann's constructive trust argument. Second, the fact that in 1982 Mrs. Andracek failed to mention to her son that she had given the shares to his sister as a gift in 1974 does not defeat the gift or contradict the testi-

mony establishing the gift. Third, the lack of any reference to Accurate stock in the wills and trust agreement and the residuary clause in Dennis' will that gives everything to Mary Ann do not hurt Mary Ann's claim; the documents are completely neutral. Finally, despite its seemingly unambiguous language, the warranty deed was only furnished to enable the government to sell all the Accurate assets, while holding the proceeds until Mary Ann's anticipated claim was finally adjudicated. It is not an impeaching declaration by Mary Ann that she has no interest in the shares.

In view of the uncontradicted testimony of two witnesses concerning Mrs. Andracek's gift of her twenty shares to Mary Ann and the evidence of unjust enrichment and abuse of a confidential relationship, we reverse and remand. On remand, if Judge Curran discredits the testimony establishing the gift he should make an express finding to that effect. Otherwise, a constructive trust should be imposed to establish Mary Ann's interest in twenty shares of Accurate.

## IV

Mary Ann also argues that she owns twenty additional shares of Accurate through operation of a resulting trust. Mary Ann asserts a one-half interest in the forty shares of Accurate for which she provided the consideration: the original twenty-five shares purchased in Dennis' name in 1964 with the proceeds of the sale of M & M equipment, the ten shares purchased in Dennis' name in 1967 with the proceeds from the sale of their jointly titled home, and the five shares purchased from Mary Andracek in 1970 with the proceeds of the sale of M & M equipment. The district court's order denied imposition of a resulting trust as to the five shares purchased from Mary Andracek and failed to address the imposition of a resulting trust over the remaining thirty-five shares. We reverse and remand.

---

**6.** Although the nominal defendant here is the United States, Mary Ann is trying to establish her right to the property prior to the forfeiture; therefore the defendant as to the imposition of a constructive trust is Dennis.

Although neither the parties nor the district court erred by relying on the statute, to avoid contributing to any confusion, we acknowledge that purchase money resulting trusts have been abolished by statute in Wisconsin. Wis.Stats. § 701.04. However, that statute did not become effective until July 1, 1971, and the acts upon which Mary Ann relies to support the creation of resulting trusts all antedate the statute. Although, as seen, applying the law at the time the actions occurred deprives Mary Ann of a remedy under the new Marital Property Act, it provides her a remedy under a resulting trust theory.

A resulting trust, unlike a constructive trust, seeks to carry out a donative intent rather than to thwart an unjust scheme. *American National Bank*, 832 F.2d at 1035. The general rule is that "[w]here a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person by whom the purchase price is paid." *Restatement (Second) of Trusts* § 440 (1959). See *Hanus v. Jankowski*, 256 Wis. 187, 40 N.W.2d 573, 574 (1949) (citing the *Restatement*). The reasoning behind the imposition of a resulting trust in favor of the payor is that persons usually don't give up something for nothing. This presumption has less force in dealings within a family where legal and moral duties of support, love and affection, rather than economic gain, motivate transactions. See *American National Bank*, 832 F.2d at 1036. The common law recognizes this and reverses the presumption in cases involving certain close relationships.

The rebuttable presumption of a gift, rather than a resulting trust, arises when the transferee is, by virtue of the relationship, a natural object of the transferor's bounty. *Restatement* § 442. The common law considered the wife, but not her husband, the natural object of the bounty. The exception, quoted with approval by the Supreme Court of Wisconsin, is that a conveyance " 'from a husband, parent, or other person, where title is taken in the name of the wife, child or other natural object of the purchaser's bounty, generally does not raise, and, on the contrary, rebuts, a resulting trust, and raises a presumption of a gratuitous settlement on the wife, child, or other object of the bounty.' " *Hanus*, 40 N.W.2d at 573 (quoting 54 Am.Jur. par. 205).

Because the conveyance in this case was by a wife, Mary Ann, to her husband, Dennis, the exception does not apply and a resulting trust is presumed. However, if the situation were reversed and Dennis had provided funds to purchase the Accurate shares that were titled in Mary Ann's name, a gift would be presumed. As we recently stated concerning the same exception in Illinois, "[i]n an era when laws that differentiate between men and women on grounds that stereotype women as the weaker sex are constitutionally suspect, ... this exception ... must be reckoned to be highly dubious." *American National Bank*, 832 F.2d at 1036. A non-discriminatory rule that would adapt the original intent of the equitable tool to modern society would presume a gift when either spouse is the payor of property taken in the name of the other spouse. See, *e.g.*, *Mims v. Mims*, 305 N.C. 41, 286 S.E.2d 779 (1982); *Butler v. Butler*, 464 Pa. 522, 347 A.2d 477 (1975); see also Bogert & Bogert, *The Law of Trusts and Trustees* §§ 459–460 (rev. 2d ed. 1977); 5 *Scott on Trusts* § 442. However, because the government failed to challenge the presumption in favor of Mary Ann on this ground and Wisconsin no longer allows the imposition of a resulting trust, thus making the point moot for future cases, the constitutionality of the distinction has not been argued and need not be determined here. We hold that a rebuttable presumption may exist imposing a resulting trust in favor of Mary Ann.[7]

In opposition to a resulting trust, the government argues that "the contention could equally be made" that Mary Ann and Dennis divided the proceeds from the sale of the M & M excavating equipment and of

---

7. Even if a non-discriminatory rule applied, the presumption that Mary Ann made a gift to Dennis could be rebutted by the evidence that neither Mary Ann nor Dennis intended the payments to be a gift and both intended that they own the shares jointly.

**1310**

their home equally between them and that Mary Ann used her share in one way while Dennis used part of his share to acquire Accurate stock (Br. at 24). Nothing in the record supports this version of the facts.

The present order of the district court does not show why Mary Ann is not entitled to twelve and one-half of the original twenty-five shares, five of the ten shares purchased in 1967 and two and one-half of the five shares purchased from Mary Andracek in 1970. We remand to allow Mary Ann to establish that she provided the consideration for these shares and thus support the imposition of a resulting trust over some or all of the shares.

The judgment of the district court is vacated and the cause remanded for further proceedings consistent with this opinion. Costs to be borne by the respective parties.